105 So.2d 164 (1958)
E.F. SNIPES, Appellant,
v.
WEST FLAGLER KENNEL CLUB, INC., a Florida corporation, et al., Appellees.
Supreme Court of Florida.
August 1, 1958.
Rehearing Denied October 8, 1958.
Richard P. Kenney, Miami, for appellant.
Ward & Ward, Miami, for West Flagler Kennel Club, Inc.
Hoffman, Kemper & Johnson, Miami, for Volusia County Kennel Club, Inc., a Florida Corp., L.M. Kirkpatrick and Miami Beach Kennel Club, Inc., a Florida Corp.
Yonge & Whiteside, Miami, for Biscayne Kennel Club, Inc., and Bill More.
Aronovitz & Aronovitz, Miami, for Key West Kennel Club, Inc.
DREW, Justice.
Appellant Snipes appeals from a final order dismissing his second amended complaint for failure to state a cause of action.
The suit was brought against five racetrack corporations operating in south Florida, and certain individuals connected therewith (appellees here). The questioned complaint alleged that plaintiff had for some years engaged in the business of raising and racing greyhounds and his dogs had been booked regularly at defendants' tracks from 1937 until about 1952-53; that thereafter the defendants denied him bookings and refused to give him cause notwithstanding his request and applications timely filed in compliance with defendant's instructions.
The complaint states, in count one, "that this refusal on behalf of the defendants was the result of the defendants' knowingly, wilfully, wantonly, wickedly, maliciously and malevolently conspiring, combining, confederating and agreeing together *165 * * * and with divers other persons * * * to prevent the plaintiff's racing his greyhounds on said defendants' tracks * * * and the defendants have through coercion and intimidation prevented other persons from leasing the plaintiff's dogs and running them * * * prevented the plaintiff doing business with other dog owners and operators in this area," and "have `spread the word' that the plaintiff is not to be allowed to race at any tracks, and that he is `a trouble maker'." There is a further direct allegation that the defendants "through their force of numbers and economic stature, have intimidated other dog tracks in this state and made them unwilling partners in the boycott and conspiracy directed against the plaintiff." (Emphasis supplied.) In elaboration of the charge of malice, plaintiff asserts that the conspiracy "is done not to gain any financial or economic benefit to the defendants, but rather to precipitate and bring about the plaintiff's financial ruin," to drive him out of the greyhound business, and deprive him of his livelihood.
Two additional counts seek damages for slander and for alleged violation of plaintiff's rights under Sections 4 and 12 of the Declaration of Rights of the Constitution of Florida. Upon appeal no argument is addressed to this portion of the complaint; accordingly, the order of the court below must be and hereby is affirmed insofar as it relates to these counts.
The allegations first above set forth, however, are sufficient to state a cause of action for civil conspiracy. Appellees rely upon the general rule that "an act which constitutes no ground of action against one person cannot be made the basis of a civil action for conspiracy." Liappas v. Augoustis, Fla., 47 So.2d 582.[1] The reason for the rule is said to be that "the gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is alleged to have been done pursuant to the conspiracy" (Loeb v. Geronemus, Fla., 66 So.2d 241, 243), and that "before the courts can punish or prevent a conspiracy, either the act conspired or the manner of its doing must be unlawful." Jetton-Dekle Lumber Co. v. Mather, 53 Fla. 969, 43 So. 590, 592. The cases point out that "the common law writ of conspiracy has been supplanted by the remedy of action on the case in the nature of conspiracy," that civil conspiracy is not an independent tort, and the sufciency of a complaint in such cases is to be determined by the otherwise tortious character of the acts alleged. See Dr. P. Phillips & Sons, Inc., v. Kilgore, 152 Fla. 578, 12 So.2d 465, 466, illustrating the general rule, where a judgment was affirmed upon a complaint for conspiracy to injure a business by malicious prosecution.
Appellant takes cognizance of this doctrine and appears to concede that the acts alleged, if performed by the defendants separately, would not be actionable, there being no compulsion upon defendants under our law to contract with particular individuals. But he relies upon an exception to the ordinary rule governing civil conspiracy (see footnote 1), most cogently stated in a line of Massachusetts decisions referred to in Liappas v. Augoustis, supra:
"From the general structure of the declaration, as well as from its allegations of power and influence on the part of the individual defendants, it would seem that this declaration was intended to state a cause of action for true conspiracy, that is to say a cause of action which involves more than a mere joint tort and the gist of which consists in the combination itself making unlawful a course of conduct that might not give rise to liability if carried on by a single individual. The attempt is to state a case like Willett v. *166 Herrick, 242 Mass. 471, 136 N.E. 366. * * * The controlling proposition of law was recently stated by this court in DesLauries v. Shea, [300] Mass. [30], 13 N.E.2d 932, 935, in these words, `There can be no independent tort for conspiracy unless in a situation "where mere force of numbers acting in unison or other exceptional circumstances may make a wrong." * * * And in order to prove an independent tort for conspiracy upon the basis of "mere force of numbers acting in unison," it must be shown that there was some "peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had."' The most common illustration of such a `conspiracy' is to be found in the combined action of groups of employers or employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals." Fleming v. Dane, 304 Mass. 46, 22 N.E.2d 609, 611. See also 6 Fla.Jur. 244.
The origin and foundations of this doctrine are made plain in an earlier opinion of that court with respect to a conspiracy to injure plaintiff's business and property interests by a scheme involving failure and refusal, with improper motives, to negotiate a loan, and causing applications to others to be successively refused. This intentional interference with an individual's credit by parties who "exercised a commanding influence in financial circles" throughout the area was deemed to be tortious when by the exercise of power in combination the plaintiff's credit was destroyed.
"If these acts were in fact committed by the concerted action of the defendants they were illegal, even if harmless when committed by an individual * * * This principle has been applied in labor cases * * * It is unfair competition for a combination of men who labor to injure another's business by an illegal strike, or to carry out a strike for a lawful purpose by unlawful means. It is also unfair competition for a combination of bankers to inflict injury upon the business or credit of an individual by acts which become illegal because of the influence and power they wield. The force of numbers may be larger in one case than in the other; but the power of these defendants in financial circles, according to the statements of the declaration, was used for the destruction and injury of the plaintiffs' business, although this power and influence were possessed by a limited number of individuals. The right to dispose of one's labor as he desires and retain the benefits of his contract `is incident to the freedom of the individual, which lies at the foundation of the government in all countries that maintain the principles of civil liberty.' * * * Any interference with the plaintiffs' business by a combination of persons by the means alleged was without justification. As was said in Burnham v. Dowd, 217 Mass. 351, 359, 104 N.E. 841, 844, 51 L.R.A.,N.S., 778.
"`There is no such thing in our modern civilization as an independent man. No single individual could continue even to exist, much less to enjoy any of the comforts and satisfactions of life, without the society, sympathy and support of at least some of those with whom his lot is cast. Every individual has the right to enjoy these, and is bound not to interfere with the enjoyment of them by others. That right indeed is usually one of merely moral obligation, incapable of enforcement by the courts, but it is none the less an actual wrong for any body of men actively to cause the infringement of that right in definite particulars; *167 and especially where such an infringement is made possible only by the concerted action of many in combination against one, and results in direct injury to his business or property. * * *'" Willett v. Herrick, 242 Mass. 471, 136 N.E. 366, 370.
If the conduct dealt with in the preceding case is analyzed as a species of financial boycott its similarity to the situation at bar is more readily apparent. Both are analogous in some respects to traditional labor combinations considered in Jetton-Dekle Lumber Co. v. Mather, supra, where this Court noted that while unquestionably individuals can stop work at any time without cause, yet such action on their part in concert may be unlawful if the motive or object sought is not a proper or legitimate one. Appellant seeks to invoke the statute construed in the latter case, F.S. Sec. 833.02, F.S.A., to characterize defendants' conduct as unlawful, but in view of our conclusion that the conspiracy alleged is otherwise actionable, the point need not be discussed.
Reversed in part, affirmed in part, and remanded for further proceedings in accordance herewith.
TERRELL, C.J., and THOMAS and THORNAL, JJ., concur.
ROBERTS, J., dissents.
ROBERTS, Justice (dissenting).
While agreeing with the principles of law enunciated by Mr. Justice DREW in his opinion, I cannot agree with his conclusion that, when such principles are applied to the allegations of the complaint, a cause of action has been stated.
The tortious activity charged against the defendants appears to have two facets: (1) their refusal to book plaintiff's dogs at their tracks, whether raced under plaintiff's own colors or under those of another kennel; and (2) their activities in allegedly interfering with plaintiff's business relations with other dog tracks and other dog owners or operators.
As to (1) above, it is clear that no cause of action has been stated against the defendants, who comprise five out of a total of fifteen dog tracks in the state. Although governmental regulation has made some inroads upon our system of free enterprise, fortunately we have not yet reached the stage where the selection of a trader's customers is made for him by the government against his will  at least, where no question of monopoly is involved. "It is a part of a man's civil rights that he be at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice." Cooley on Torts, p. 278. Each defendant, acting separately, had the same right to refuse to have any business dealings, either directly or indirectly, with the plaintiff as the plaintiff had to refuse to race his dogs at defendants' tracks. The fact that the defendants were alleged to have acted in combination, rather than separately, has not brought about a result "different in kind from anything that could have been accomplished by separate individuals." Fleming v. Dane, 304 Mass. 46, 22 N.E.2d 609, 611, quoted in Liappas v. Augoustis, Fla. 1950, 47 So.2d 582, 583. Obviously, insofar as the injury and damage sustained by plaintiff referrable to the defendants' refusal to book plaintiff's dogs at their tracks are concerned, the essential character thereof remains exactly the same in kind, whether done separately or in concert.
It is true that the complaint alleged that the "conspiracy" was engaged in not "to gain any financial or economic benefit to the defendants, but rather to precipitate and bring about the plaintiff's financial ruin"; but it is not alleged that this result was, in fact, accomplished, nor does the appellant's *168 bill of particulars claim damages therefor. "It is the wrong done and the damage suffered pursuant to the conspiracy which is the cause of action, rather than the conspiracy itself." Perry v. Meikle, 1951, 102 Cal. App.2d 602, 228 P.2d 17, 20. See also Dr. P. Phillips & Sons, Inc., v. Kilgore, 1943, 152 Fla. 578, 12 So.2d 465; Humphrey v. Terry, 1921, 206 Ala. 249, 89 So. 607; Chapman v. Pollock, D.C.Mo. 1957, 148 F. Supp. 769; Continental Ins. Co. v. Board of Fire Underwriters of the Pacific, C.C., 1895, 67 F. 310, 322. This rule applies equally to cases of so-called "true conspiracy" where the mere force of numbers, acting in unison, effects a result different in kind from that which could have been accomplished by an individual member of the conspiracy. In these cases the conspiracy must, of course, be alleged and proved because it is the combination itself that changes the character of the individual acts which result, eventually, in an actionable wrong. And it was in this sense that we made the statement in Liappas v. Augoustis, supra, 47 So.2d 582, 583, that "the conspiracy itself becomes the gist of the action." But in this as well as in the other type of conspiracy, it is not the technical conspiracy that gives rise to a right of action; it is the actionable wrong and damage that result therefrom for which plaintiff sues. See Fleming v. Dane, supra, 22 N.E.2d 611; Montgomery Ward & Co. v. South Dakota Retail Merchants' & Hardware Dealers' Ass'n, C.C., 1907, 150 F. 413; Neustadt v. Employers' Liability Assur. Corp., 303 Mass. 321, 21 N.E.2d 538, 123 A.L.R. 134.
Moreover, in view of the fact that there are many other dog tracks in this state and other states, it is difficult to conceive how defendants would be able to accomplish the ruination of plaintiff's business by merely withdrawing their patronage  nor does plaintiff's complaint enlighten us in this respect. Beyond the bare statement quoted above, no further elaboration of this charge is made.
Clearly, no cause of action has been stated by plaintiff based on defendants' refusal to book plaintiff's dogs, either directly or indirectly, at their tracks.
As to (2) above, respecting the alleged interference by defendants with plaintiff's prospective business relations with other dog tracks and dog owners, the complaint is remarkable for the many conclusions of the pleader and the noticeable omission of any allegations of specific facts upon which to base such charge. Thus, the complaint alleges that the defendants "are in a position through coercion and intimidation to virtually impose their will upon any person seeking to race at [defendants'] tracks, and the defendants have through coercion and intimidation prevented other persons from leasing the plaintiff's dogs and running them in a kennel under their name, and have in addition through said coercion and intimidation interfered with and prevented the plaintiff doing business with other dog owners and operators in this area and thus have deprived the plaintiff of this additional and supplemental income." In the next numbered paragraph the complaint alleges that "the said conspiracy hereinbefore alleged has been for the sole and express purpose of preventing the plaintiff, all without cause or justification, from racing on the defendant tracks or from allowing his dogs leased to others to be raced on said tracks, and further for the purpose of preventing the plaintiff from engaging in his livelihood of raising, breeding and racing Greyhound dogs and puppies; * * *" Thus, when read in context, it is clear that, as to other dog owners and operators, the plaintiff complains only that the defendants have refused to book plaintiff's dogs at their tracks, whether raced under plaintiff's name or under the name of another kennel to which plaintiff leased his dogs. As shown above, the defendants had the right to choose their own customers and to refuse to have any business relations with plaintiff, either directly or indirectly. There is no allegation that defendants have coerced other dog *169 owners and operators to refrain from leasing plaintiff's dogs for the purpose of racing them at any of the other ten dog tracks in the state; nor are we told of the means by which this coercion and intimidation have been effectuated. If this was a fact, plaintiff should have alleged it.
As to alleged interference with plaintiff's business relations with other dog tracks, it is alleged that "notwithstanding that there are other dog tracks in the State of Florida the defendants herein, through their force of numbers and economic stature, have intimidated other dog tracks in this state and made them unwilling partners in the boycott and conspiracy directed against the plaintiff." It is also alleged that defendants "have `spread the word' that the plaintiff is not to be allowed to race at any tracks, and that he is `a trouble maker'." Notable here is the absence of any allegation that plaintiff has actually been refused permission to book his dogs at any of the ten other dog tracks in this state. Thus, the allegation that the other dog tracks in this state have become "unwilling partners in the boycott and conspiracy directed against the plaintiff", if such a vague generalization can mean anything, can mean only that the other dog tracks have agreed not to book plaintiff's dogs at their tracks  not that they have actually refused to do so. And since, as noted, "[i]t is the wrong done and the damage suffered pursuant to the conspiracy which is the cause of action, rather than the conspiracy itself", the plaintiff has, in the writer's opinion, failed to state a cause of action based on alleged interference with his business relations with other dog tracks.
In the opinion of the writer, the defendants were privileged to refuse to book plaintiff's dogs at their own tracks, either directly or from plaintiff's lessee; and the plaintiff completely failed to state a cause of action for wrongful interference with plaintiff's business relations with other dog tracks or dog owners and operators. I would, therefore, affirm the judgment here reviewed.
NOTES
[1] The above quotation from the able opinion prepared for the Court by Mr. Justice Roberts is qualified by a further sage observation that such rule is applicable in all cases "unless the mere force of numbers, * * * or other exceptional circumstances, gives rise to an independent wrong." (Emphasis supplied.)