342 So.2d 1090 (1977)
Jerry A. MARGOLIN, M.D., Appellant,
v.
MORTON F. PLANT HOSPITAL ASSOCIATION, INC., a Nonprofit Florida Corporation, et al., Appellees.
No. 76-776.
District Court of Appeal of Florida, Second District.
March 4, 1977.
*1091 F. Wallace Pope, Jr., of Johnson, Blakely & Pope, P.A., Clearwater, for appellant.
Emil C. Marquardt, Jr. and James A. Martin, Jr., of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, for appellees, Morton F. Plant Hospital Ass'n, Inc., Roger S. White and Paul J. Straub, M.D.
J. Michael Ford, of Blake & Ford, P.A., Tampa, for appellees, Cooksey, Rackstein, Kottmeier, Turbin, Burns and Dabney.
GRIMES, Judge.
This is an appeal from the dismissal of a complaint which alleged that the plaintiff/doctor was prevented from conducting surgery at Morton Plant Hospital in Clearwater by being improperly deprived of the necessary anesthesia services.
The complaint was couched in four counts. We concur with the dismissal of Counts II, III and IV and need not discuss the substance of these counts. Count I is another matter.
The essential allegations of Count I may be summarized in the following manner. The plaintiff is a licensed physician engaged in the practice of ear, nose, throat and cosmetic surgery in Pinellas County. He is a member in good standing of the medical staff of Morton Plant Hospital. The defendant, Roger White, is the Executive Director and Administrator of the hospital, and the defendant, Dr. Straub, is president of the hospital's medical staff. The other defendants, characterized as the group, are licensed physicians who practice anesthesiology as members of the hospital staff. The defendants comprising the group are the only anesthesiologists on the Morton Plant Hospital staff and are alleged to be exercising absolute control over the availability and rendering of general anesthesia services to all surgeons and their patients at the hospital.
The plaintiff alleges that the admission of his patients into the surgical facilities of Morton Plant Hospital, and the obtaining of general anesthesia services are essential to his practice as a surgeon in Clearwater. He says that since 1973 until the happening of the events alleged in the complaint, all of his patients who required general anesthesia were treated at Morton Plant Hospital. Almost 50% of the plaintiff's surgical patients were referred to him by other physicians on the staff of the hospital. He further alleges that for the past several years he has performed surgery on hundreds of patients at the hospital during which members of the group have routinely and regularly rendered general anesthesia services. Yet, he contends that subsequent to March 28, 1975, the members of the group have wantonly and maliciously combined and conspired with each other and with the defendants, White and Straub, to boycott the plaintiff and his patients by denying them the availability of anesthesia services and thereby the use of the hospital's surgical facilities. The plaintiff alleges that by virtue of their unique position as the only anesthesiologists on the hospital staff and their concerted refusal to provide him with general anesthesia services, the members of the group have interfered with the contractual rights between him and his patients. The purpose is said to be to bring about the plaintiff's financial ruin by driving him out of his established practice of medicine in Clearwater.
Certain specific acts of the defendants are alleged in paragraph 13 as follows:
"13. In the furtherance of said combination and conspiracy, the below-described defendants, without cause or justification, wilfully, wantonly and maliciously undertook the following concerted, overt acts:
A. On or about April 18, 1975, the GROUP collectively refused to render any general anesthesia services to plaintiff or his patients.
B. On or about April 18, 1975, the defendants, STRAUB and WHITE, acting *1092 in concert on behalf of themselves and the GROUP, cancelled all of plaintiff's surgery cases which had previously been scheduled for April 21, 22 and 23, 1975, at MPH, refused to permit plaintiff to perform plaintiff's scheduled surgery at MPH, and refused to permit plaintiff to admit to MPH general anesthesia patients in the future.
C. On April 21, 1975, the defendants, WHITE, STRAUB, BURNS, DABNEY and TURBIN, acting in concert and on behalf of themselves and the other defendants hereto, met with plaintiff and informed him that the GROUP's refusal to render general anesthesia services to plaintiff and his patients and the restrictions against plaintiff's use of the surgical facilities of MPH would continue until such time as a lawsuit filed on March 28, 1975, by plaintiff's wife, Dr. Ann Margolin, in Federal Court in Tampa, Florida, against all defendants but STRAUB was dismissed, and general anesthesia services from the GROUP would be available to plaintiff and his patients only after said action by Dr. Ann Margolin was dismissed.
D. On May 11, 1975, the defendants, WHITE and STRAUB, acting in concert on behalf of themselves and the GROUP, discharged plaintiff's patient, Kevin Jarrett, who had been admitted to MPH for surgery requiring general anesthesia services, and the GROUP collectively refused to render anesthesia services for plaintiff's patient, Kevin Jarrett.
E. The GROUP continues to boycott plaintiff and his patients by refusing plaintiff and his patients general anesthesia services.
F. All defendants, on dates and times presently unknown to plaintiff, have since March 28, 1975, combined and conspired to block and prevent the appointment of at least two additional M.D. anesthesiologists to the staff of MPH, thereby preserving the absolute control of the GROUP over the rendering of anesthesia services at MPH and continuing the effectiveness of the boycott directed against plaintiff and his patients by preventing other anesthesiologists not controlled by the GROUP from becoming qualified to render services to plaintiff and his patients at MPH."
The plaintiff concludes that as a result of the conspiracy he has been denied the opportunity to practice any surgery at Morton Plant Hospital. As a consequence, he seeks compensatory and punitive damages for lost surgical patients, the decrease in the number of referral patients, the denial of the right to practice a vital portion of his profession, and the damage to his professional reputation and ability to earn a living.
In support of his claim to a cause of action, the plaintiff relies heavily upon Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla. 1958). The complaint in that case alleged that five racetrack corporations and others connected with them had wrongfully conspired to refuse to permit him to race his greyhounds at their tracks. The complaint further alleged that the defendants, through their force of numbers and economic stature, had intimidated other dog tracks in the state and made them unwilling partners in the boycott and conspiracy being directed toward the plaintiff. The plaintiff contended that the conspiracy was being carried on not to gain any financial benefit but rather to precipitate his financial ruin by driving him out of the greyhound business. The court first stated the general rule in Florida was that an act which did not constitute a cause of action against one person could not be made the basis of a civil action for conspiracy. However, the court went on to point out that an exception to this rule existed in which by reason of the force of numbers or other exceptional circumstances the conduct of the defendants acting in concert could be such as to give rise to an independent wrong. The court quoted with approval from a Massachusetts case in which it was said that in order to prove an independent tort for conspiracy upon this basis, it must be shown that there was some "`peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in like relation to the *1093 plaintiff would not have had.'" The court held that the allegations of the complaint fell within the exception and were thereby sufficient to state a cause of action for civil conspiracy.
Though the facts are quite different, the rationale of Snipes is applicable to the instant case. Certainly, any one of the group could decline to render services to the plaintiff for whatever reason he might have. Yet, when all of them declined to do so, the effect is to preclude the plaintiff from conducting surgery at Morton Plant Hospital. While the plaintiff is admittedly free to seek to perform his surgery at some other hospital, the loss of his opportunity to perform surgery at Morton Plant when he is a fully accredited member of that hospital's staff is a substantial deprivation of his rights. When a surgeon loses his right to operate at a major hospital in his community where all of his general surgical procedures have previously been conducted, he is bound to suffer a substantial impairment of his economic well-being.
The defendants point out that there are other hospitals in the Tampa Bay area, but we would be naive to think that this is a practical alternative to using a major hospital in the plaintiff's locale. The gravamen of the exception in Snipes is the effectiveness of the boycott and not its geographical scope. There, the effectiveness arose from the defendant's absolute control over five dog tracks where Snipes conducted his racing business. Here, the effectiveness of the boycott arises from the group's absolute control over anesthesia services at an institution where the plaintiff practiced all of his general surgery before the commencement of the boycott. The power of coercion over the plaintiff with respect to his use of Morton Plant Hospital is evident from the allegations that the members of the group are the only anesthesiologists on the staff and that the defendants have conspired to block the appointment of additional anesthesiologists who might be willing to work with the plaintiff.
The case of Cowan v. Gibson, 392 S.W.2d 307 (Mo. 1965), warrants consideration be cause of its analysis of the effect upon a doctor when he cannot practice in a particular hospital. There, the Missouri Supreme Court upheld a complaint by a doctor alleging that other doctors comprising the staff of a private hospital had wrongfully conspired to prevent him from acquiring membership on the medical staff so as to force his patients to seek the services of the defendants in their individual practice in order to obtain proper medical treatment. While the motivation of the defendants was different than that alleged in the instant case, the Missouri court pointed out the defendants' unjustified refusal to admit the doctor to the staff constituted an inference with the plaintiff's contractual rights with his patients. See also Regan v. Davis, 97 So.2d 324 (Fla. 2d DCA 1957), in which our court upheld a complaint for conspiracy to interfere with the plaintiff's right to practice her profession as a speech therapist.
Apropos to our discussion is Section 765 of the Restatement of Torts (1939) which reads as follows:
"§ 765. CONCERTED REFUSAL TO DEAL.
(1) Persons who cause harm to another by a concerted refusal in their business to enter into or to continue business relations with him are liable to him for that harm, even though they would not be liable for similar conduct without concert, if their concerted refusal is not justified under the circumstances.
(2) In the issue of justification under the rule stated in Subsection (1), the following are important factors:
(a) the objects sought to be accomplished and the interests sought to be advanced by the actors' conduct;
(b) the extent of the hardship caused to the person against whom the actors' conduct is directed and his opportunities for mitigating the hardship;
(c) the appropriateness of the actors' conduct as a means of advancing their interests and the availability of less harmful means to that end;
(d) the relations between the actors and the person against whom the conduct *1094 is directed and their relative economic power;
(e) the effects of the actors' conduct and of its objects on the social interest in business enterprise and competition."
While the terminology in Snipes and that of the Restatement is different, we think this difference is little more than semantics. The Snipes exception of coercion falls within the scope of Section 765(2)(d). In essence, even though a person has the privilege of selecting those with whom he wishes to conduct business, when several persons who occupy a coercive position with respect to another act in concert to decline to do business with him, their refusal may under certain circumstances constitute an independent tort.
We hasten to point out that we simply hold that Count I states a cause of action. As recognized in Section 765(2)(a) of the Restatement, there may be a number of legitimate reasons why the group has declined to render services to the plaintiff, but these are matters of defense which do not appear on the face of the complaint.
The order dismissing Count I is reversed. The order dismissing Counts II, III and IV is affirmed.
BOARDMAN, C.J., and HOBSON, J., concur.