403 So.2d 1025 (1981)
John W. BUCKNER, M.D., Appellant,
v.
The LOWER FLORIDA KEYS HOSPITAL DISTRICT d/b/a Florida Keys Memorial Hospital, Jaime M. Benavides, M.D., Robert P. Kaminsky, M.D., Jose T. Sanchez, M.D., J. Lancelot Lester, Jr., M.D., Robt. L. Carraway, M.D., Thomas H. Robinson, M.D., Robert L. Kalett, M.D., Joseph J. Scarlet, M.D., and Gary L. Keach, Appellees.
No. 79-2265.
District Court of Appeal of Florida, Third District.
August 11, 1981.
Rehearing Denied October 5, 1981.
*1026 Edna L. Caruso, Montgomery, Lytal, Reiter, Denney & Searcy, W. Palm Beach, for appellant.
Horton, Perse & Ginsberg and Mallory H. Horton, Miami, David Paul Horan, Key West, Floyd, Pearson, Stewart, Richman, Greer & Weil and James B. Tilghman, Jr., Miami, for appellees.
Before BARKDULL, SCHWARTZ and NESBITT, JJ.
NESBITT, Judge.
The appellant, a licensed physician, brings this appeal to contest the trial court's dismissal of his third amended complaint. Dr. Buckner attempted to allege a civil conspiracy, jointly and severally, against the Florida Keys Hospital, doing business as Florida Keys Memorial Hospital; two separate boards of trustees of the hospital; two hospital administrators; and the hospital's medical staff, for injuries resulting from the underlying allegations of:
(1) defamation;

*1027 (2) wrongful interference with his profession by:
(a) termination of his staff privileges at the hospital; and
(b) the failure to renew his status as a member of the hospital staff for an ensuing year; and
(3) the independent tort of conspiracy.
The third amended complaint, consisting of more than 100 paragraphs en masse, without any attempt to set forth separate claims, had annexed to it and incorporated by reference, fifty-nine pages of exhibits. The trial court dismissed the final (fourth) pleading effort on the merits as well as for failure to comply with previous orders of court with respect to proper pleading. Having sifted through the melange by which the plaintiff pontifically lauded himself, while castigating the medical community in which he practiced with vitriolic and intemperate remarks, we commend the patience, fortitude, and stamina of the trial judge who labored in this cause and are of the unqualified view that he reached the correct conclusion.

DISMISSAL OF THE COMPLAINT FOR VIOLATION OF ORDERS OF COURT
Although the desirable end of pleading is to create an issue and thus dispose of a cause of action on the merits, when the privilege to amend has been abused in violation of orders of court the ultimate sanction of dismissal is sometimes appropriate. Pinakatt v. Mercy Hospital, Inc., 394 So.2d 441 (Fla.3d DCA 1981). This pleading effort was prolix,[1] duplicitous,[2] scandalous, and impertinent.[3] Despite the apparent admonitions of the trial court, each successive attempt to allege a cause of action became more bloated and vitriolic. Such flagrant abuse of pleading not only demonstrates a disregard for the adversary system but a lack of professionalism and sense of responsibility as a member of the Florida Bar.

THE MERITS OF THE COMPLAINT
Despite the temptation to affirm the trial court on the basis of Dr. Buckner's abuse of the right to amend, we nonetheless address the merits of the third amended complaint. Notwithstanding its volume, we find the complaint deficient, from a pleading standpoint, in crucial areas and affirm the order of dismissal.

THE CONSPIRACY TO DEFAME
A gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the plaintiff. Liappas v. Augoustis, 47 So.2d 582 (Fla. 1950); 10 Fla. Jur.2d Conspiracy § 2. An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy. Liappas v. Augoustis, supra. To support a cause of action for conspiracy to defame, it is therefore incumbent upon a plaintiff to properly allege those elements which would establish a defamation, one of which is a publication. Barry College v. Hull, 353 So.2d 575 (Fla.3d DCA 1977). Dr. Buckner failed to allege a publication and therefore failed to state a cause of action for conspiracy to defame, regarding statements about his alleged psychiatric commitment and attendant difficulties. In order to properly plead a publication of a defamatory matter, it must be found that a statement was communicated to some third party in order to be actionable. Owner's Adjustment Bureau, Inc. v. Ott, 402 So.2d 466 (Fla.3d DCA 1981); Tyler v. Garris, 292 So.2d 427 (Fla. 4th DCA 1974); Fiore v. Rogero, 144 So.2d 99 (Fla.2d DCA 1962) [comments made to named reporters]. The decision of Burnham v. State, 37 Fla. 327, 20 So. 548 (Fla. 1896) explains the need for the accusatory pleading to identify the particular person to whom the remarks were made with a reasonable degree of certainty. Since a separate defamation *1028 occurs with respect to each publication, a defendant should be afforded enough information to determine affirmative defenses including but not limited to res judicata. In the present case, the defamatory remarks were allegedly made to "numerous third parties on numerous occasions." Although some do not heed to the pleading requirements, it is still mandatory under established precedent that a complaint must allege ultimate facts. Ocala Loan Company v. Smith, 155 So.2d 711 (Fla. 1st DCA 1963). Consequently, the complaint was deficient with respect to one of the underlying requirements of defamation; namely: a properly alleged publication.

THE CONSPIRACY TO WRONGFULLY INTERFERE WITH PLAINTIFF'S 
PROFESSION
The next cause of action attempted to be asserted alleged that the defendants conspired to interfere with Dr. Buckner's profession by terminating and failing to renew his privileges as a staff member of the defendant hospital. Initially, we note that a physician's use of a public hospital is a privilege rather than a right. Bryant v. City of Lakeland, 158 Fla. 151, 28 So.2d 106 (1946); Mizell v. North Broward Hospital District, 175 So.2d 583 (Fla.2d DCA 1965). The Legislature has addressed this problem by attempting to partially immunize the hospital medical staff under Section 395.065(1), Florida Statutes (1977)[4] which authorizes a hospital "to suspend, deny, revoke, or curtail the staff privileges of a staff member for good cause, which shall include but not be limited to ... [certain enumerated offenses]." [emphasis supplied] Subsection (2) of that statute further provides:
There shall be no liability on the part of, and no cause of action of any nature shall arise against, any hospital, hospital medical staff, or hospital disciplinary body or its agents or employees for any action taken in good faith and without malice in carrying out the provisions of this section.
Because the complaint, as amended, alleges that the defendants acted maliciously and in effect without probable cause, the plaintiff did allege sufficient facts to avoid the defendants' statutory immunity provided by this section. Consequently, we must examine Dr. Buckner's complaint, as amended, to see if it was nonetheless actionable.
We begin our analysis by observing that a cause of action for wrongful interference with a business relationship is recognized only when the interference is by one who is not a party to that relationship. Ethyl Corporation v. Balter, 386 So.2d 1220, 1224 (Fla.3d DCA 1980), rev. denied, 392 So.2d 1371 (Fla. 1981); Days v. Florida East Coast Railway Company, 165 So.2d 434 (Fla.3d DCA 1964). The relationship in this case was between Dr. Buckner and the Florida Keys Memorial Hospital. Much like a corporation, which must act through its officers, directors, and employees, Jacksonville American Pub. Co. v. Jacksonville Paper Co., 143 Fla. 835, 197 So. 672 (1940); Browning v. State, 101 Fla. 1051, 133 So. 847 (1931); Jewel Foliage Company v. Uniflora Overseas Florida, Inc., 497 F. Supp. 513 (M.D. Fla. 1980), so must a hospital. In the instant case, it was alleged that the "defendants," all of whom make up the hospital's medical staff, administration, and boards, conspired to interfere with Dr. Buckner's profession. None of the individuals could make the ultimate decision to grant or deny staff privileges to a doctor. Such a determination can only be made by the hospital through a composite of these defendants acting in their various hospital capacities. Since the combined efforts of the defendants were required to render any decision on staff privileges, there was no interference by "third parties" when staff privileges were denied by them as a group. Ethyl Corporation v. Balter, supra, West v. Troelstrup, 367 So.2d 253 (Fla. 1st DCA 1979).
*1029 Absent the underlying tort of willful interference, there can be no cause of action for conspiracy to interfere. Liappas v. Augoustis, supra; Days v. Florida East Coast Railway Company, supra.
Additionally, an action for conspiracy to interfere with one's profession (or conspiracy to commit any tort for that matter) requires that there has been a combination of two or more persons (or entities) seeking to accomplish an unlawful act or to accomplish a lawful act by unlawful means. The actors must have a common purpose. Kilgore Ace Hardware, Inc. v. Newsome, 352 So.2d 918 (Fla.2d DCA 1977); Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla.2d DCA 1958). Since a corporation must act through its officers, directors, or employees, it is well settled that a corporation cannot conspire with those persons unless the individual has a personal stake in the activity apart from that of the corporation. Jewel Foliage Company v. Uniflora Overseas Florida, Inc., supra. Accord, Girard v. 94th Street and Fifth Avenue Corporation, 530 F.2d 66 (2nd Cir.), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976) [suit brought under 42 U.S.C.A. 1985(3); identified individuals who comprise board of directors cannot conspire when acting in their official capacities]. The hospital is viewed as a single entity acting through its staff, the defendants, and therefore, by definition, was unable to conspire with itself to interfere with Dr. Buckner's profession.

THE INDEPENDENT TORT OF CONSPIRACY
Dr. Buckner's complaint, as amended, attempted to allege a cause of action of independent tort of conspiracy. This tort is actionable where a plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual could not possess. Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla. 1977) [individual jai-alai frontons allegedly conspired to prevent plaintiffs, jai-alai players, from obtaining employment in their respective arenas]. Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla. 1958) [five kennel clubs refused a greyhound racer privileges at their respective tracks and intimidated other kennel clubs in the state to similarly boycott him]. The situation in the present case is distinguishable from the recognized rule because, as stated, any decision regarding staff privileges is necessarily made by and through the defendants acting as a single entity and therefore there could not be a combination of separate economic groups or forces.
Dr. Buckner nonetheless urges that the complaint, as amended, was sufficient under the reasoning of Margolin v. Morton F. Plant Hospital Association, Inc., 342 So.2d 1090 (Fla.2d DCA 1977). In Margolin, a surgeon was prevented from practicing his profession at the hospital through an alleged conspiracy of all the anesthesiologists on the hospital staff. There, the concerted refusal, by all of the staff anesthesiologists at a particular hospital, to anesthetize Dr. Margolin's patients is entirely different from the termination of or refusal to renew Dr. Buckner's hospital staff privileges. To be effective under the by-laws, questions as to staff privileges must be decided by the hospital, a single entity, which can only act through its officers, agents, and staff. As pointed out in Margolin, each anesthesiologist could individually determine whether he would provide services to a particular surgeon. By exercising that individual prerogative in combination and with each other to achieve the single objective of preventing Dr. Margolin from operating on patients at the hospital, they rendered themselves liable for the independent tort of conspiracy. Margolin is distinguishable and therefore not persuasive because the decision to terminate or not to renew Dr. Buckner's staff privileges necessarily had to be made by the defendants as a group and did not constitute a concerted effort by separate entities but simply came about as a result of the hospital acting through its respective components.
For the foregoing reasons, the order dismissing the plaintiff's third amended complaint is affirmed.
NOTES
[1] Contrary to Florida Rule of Civil Procedure 1.110(b).
[2] Contrary to Florida Rule of Civil Procedure 1.110(f).
[3] And subject to a motion to strike under Florida Rule of Civil Procedure 1.140(f).
[4] This statute is scheduled for repeal effective July 1, 1982, § 3, Ch. 76-168, Laws of Fla. as amended by § 1, Ch. 77-457, Laws of Fla.