931 So.2d 137 (2006)
Richard L. WALTERS and Roberta Walters, Appellants,
v.
Kirby BLANKENSHIP, Bonnie Blankenship, et al., Appellees.
No. 5D05-1541.
District Court of Appeal of Florida, Fifth District.
April 28, 2006.
Rehearing Denied June 20, 2006.
*138 Jack W. Shaw, Jr., Orlando, and Douglas M. Bates, Fort Lauderdale, for Appellants.
Jeffrey L. Price and Kristin M. Davis of The Robertson Group, Gainesville, for Appellees McNeely.
Kristen M. Van Der Linde and Blake J. Hood, of Boyd & Jenerette, P.A., Jacksonville, for Appellees Weaver.
No Appearance for Appellees Blankenship.
SHARP, W., J.
Richard and Roberta Walters, the plaintiffs below, appeal an order dismissing with prejudice their complaint against their former neighbors: Kirby and Bonnie Blankenship, Thomas and Lynn Klinehofer, Farrell and Sharon McNeely, and Richard and Demetria Weaver (collectively the defendants) for failure to state a cause of action. We conclude the complaint states a cause of action or, at the very least, can be amended to state a cause of action for tortious interference with a prospective business advantage or civil conspiracy. We reverse and remand for further proceedings.
We begin our analysis by noting we express no opinion as to whether the Walters will ultimately prevail on their claims. At the dismissal stage, our inquiry is solely limited to questions of law. In conducting this review, we must confine ourselves to the four corners of the complaint and accept all allegations in the complaint as true. We are not free to speculate as to what may indeed be true or ultimately proven. Parker v. Parker, 916 So.2d 926 (Fla. 4th DCA 2005); Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859 (Fla. 5th DCA 1996).
The facts of this case as set forth in the Walters' complaint are as follows: The Walters owned four luxury condominium *139 units and the defendants also each owned one or more units in the same complex. The Walters subsequently listed their four units for sale through a real estate auction company wherein potential bidders were required to deposit a $50,000 cashier's check as a condition precedent to participation as a bidder at the auction. However, there was no reserve for the auction. Twenty-some bidders deposited the required check.
On the day prior to the auction the Walters assert that defendant Thomas Klinehofer confronted another unit owner (not a party to this suit) and stated, "you wait until the day of the sale and see what we are going to do to Dick Walters." On the day of the auction, the defendants placed "for sale by owner" signs in front of their respective units which was prohibited by condominium rules. The auction took place as scheduled.
The Walters' condominium units sold for a total price of $2,066,925. The Walters alleged the combined acts of the defendants placing "for sale by owner" signs in front of their respective units caused catastrophic financial and emotional damage. As a proximate result of these "intentional, spiteful, malicious and non-privileged" acts, each unit offered by the Walters sold at a substantial loss. The defendants allegedly removed all of the "for sale by owner" signs immediately after the last of the Walters' units was sold, which was further evidence that the defendants' acts were "grotesque, macabre, malicious and spiteful."
Based on the above, the Walters filed a complaint against the defendants for tortious interference with a prospective economic advantage, intentional infliction of emotional distress and civil conspiracy to commit the same. The Walters sought compensatory damages in excess of $1.5 million and punitive damages in the amount of at least $4.5 million for the alleged financial losses and emotional distress arising out of the posting of "for sale by owner" signs by the defendants.
The Walters asserted that the presence of "for sale by owner" signs in front of other condominium units lowered the bids and selling prices of their units, causing substantial financial losses. The Walters alleged the defendants knew the Walters were offering all four units for sale at the auction with no price reserve, knew that the auction was non-cancellable and knew that, absent their interference, the four units would sell for substantially higher prices.
The elements of a cause of action based on tortious interference with a business relationship are (1) the existence of a business relationship, (2) the defendant's knowledge of the relationship, (3) the defendant's intentional and unjustified interference with the relationship and (4) damage to the plaintiff as a result of the breach of the relationship. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812 (Fla.1994); Sobi v. Fairfield Resorts, Inc., 846 So.2d 1204 (Fla. 5th DCA 2003).
Here the Walters alleged the existence of a business relationship with the successful bidders, if not all prospective bidders, their neighbors' knowledge of this relationship, their neighbors' intentional and unjustified interference with this relationship by posting "for sale by owner" signs only during the sale of the Walters' units and with the intention of driving down the Walters' sales price and the resulting damage in the form of a much reduced sales price for the Walters' four units. These allegations appear sufficient to us to state a cause of action for tortious interference.
We view these allegations as involving much more than a "mere offer to sell." Once the Walters agreed to the auction *140 without a reserve, they were obligated to accept the offers on their units irrespective of price. More than 20 bidders, each posting a substantial bond, attended the auction and the units were sold for substantial losses. Thus the parties had progressed beyond the stage of a mere offer to sell the Walters were now obligated to sell their units albeit at greatly depressed prices, as the result of the interference of the defendants.
Nor do we find the defendants had an absolute First Amendment right to post their "for sale" signs. In Americas Homes, Inc. v. Esler, 668 So.2d 239 (Fla. 5th DCA 1996), we held that homeowners were simply exercising their right to free speech when they placed "for sale" signs on their property even though the signs indicated potential of flooding in the area, and may have decreased home sales.
In that case, however, the homeowners had a legitimate reason for posting their "for sale" signs and were doing so on the advice of their broker. The homeowners had listed their property for sale and shortly thereafter, a flood occurred nearby. Their broker advised the homeowners they would not be able to sell their property unless they fully disclosed the flooding. The homeowners complied with their broker's request by posting a sign which read: "Due to local flooding this property is for sale."
In contrast, here the defendants had no legitimate reason for posting their "for sale" signs. Their units were not for sale and their signs were removed as soon as the last of the Walters' units was sold. According to the Walters' complaint, the defendants posted their for sale signs simply out of malice and spite. See Londono v. Turkey Creek, Inc., 609 So.2d 14 (Fla. 1992) (allegations that disgruntled homeowners intentionally and maliciously made false statements concerning developer's operation of planned unit development to third parties and local government officials for purpose of harming developer's economic interests made facially sufficient claim that homeowners abused First Amendment right to petition government and stated claims for tortious interference with contractual rights, tortious interference with advantageous business relationship, and civil conspiracy).
As for the count of civil conspiracy, we conclude it is viable, based either on the underlying tortious interference count or as an independent tort. The elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County, 616 So.2d 562 (Fla. 5th DCA 1993).
Generally an actionable conspiracy requires an actionable underlying tort or wrong. See Florida Fern Growers Ass'n, Inc.; Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984). However, an alternative basis for a civil conspiracy claim exists where the plaintiff can show some "peculiar power of coercion" possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess. See Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla.1977) (jai-alai players stated claim for conspiracy against jai-alai fronton owners who allegedly conspired to prevent players from getting jobs in arenas after a players strike); Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla.1958) (claim for conspiracy was stated against five kennel club owners who refused the plaintiff greyhound racer privileges at their tracks and used intimidation to drive the plaintiff *141 out of business); Margolin v. Morton F. Plant Hospital Ass'n, Inc., 342 So.2d 1090 (Fla. 2d DCA 1977) (physician stated a claim for conspiracy against a group of anesthesiologists who refused to provide their services to plaintiff's patients, depriving him of his hospital privileges, and thereby driving him out of his practice).
Here it was the concerted nature of the defendants' actions that allegedly caused the resulting losses to the Walters. Had only one defendant put up a for sale sign, that action may have had no significant effect on the auction. However, when the defendants in concert all posted for sale signs, it appeared that five sellers were trying to sell their units in the same condominium and that twice as many units were for sale.
According to the Walters, this was a small condominium complex and the defendants' actions made it appear that a majority of units were now for sale.[1] This greater number of units up for sale suggests something may have been wrong with the condominiums or, at the very least, dramatically increased the supply of units for sale, thus lowering the market value of each unit.
Because we find that the trial court erred in dismissing the Walters' complaint with prejudice, we reverse and remand for further proceedings.
REVERSED AND REMANDED.
TORPY, J., concurs specially with opinion.
LAWSON, J., dissents with opinion.
TORPY, J., concurring specially.
I concur with Judge Sharp's opinion but write to address issues raised by the dissent.
Judge Lawson contends that the mere posting of for sale signs cannot, as a matter of law, constitute "unjustified interference," because of the "legal" nature of the act. I disagree. It seems to me that most, if not all, tortious interference cases involve acts that are otherwise "legal." Indeed, I cannot imagine an interference case where the act of interference does not involve the spoken or written word, in and of itself usually "legal." To avoid the chilling effect that this tort might have on proper speech, to be actionable, the interference must be "unjustified." Ins. Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc., 384 So.2d 303, 306-07 (Fla. 5th DCA 1980). Determining whether interference is unjustified requires a balancing of interests and turns on what is "right" and "just" under the "rules of the game." Id. As we stated:
The question of whether appellants' admittedly intentional interference was unjustifiable depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances among which the methods and means used and the relation of the parties are important. Restatement 2d, Torts s 767 and comments.
In framing the issue, we agree with the opinion of the New Jersey Supreme Court in Grillo v. Board of Realtors of the Plainfield Area, 91 N.J.Super. 202, 219 A.2d 635 (1966), that the ultimate inquiry is whether the interference by the defendant is "sanctioned by the rules of the game." As the New Jersey Court notes:

*142 There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances. Not only must defendants' motive and purpose be proper but so also must be the means. (Citations omitted). 219 A.2d at 649.
Ins. Field Servs., Inc., 384 So.2d at 306-07 (emphasis supplied).
Here, I think a jury question is framed by the pleading. No legitimate interests were advanced by the interference. Conversely, the right of plaintiffs to sell their property was of paramount importance. If it can be proven that the defendants acted out of pure spite, for the sole purpose of harming plaintiffs (or for another improper purpose), as has been alleged, this cannot be justified under any rules of any game with which I am familiar.
Moreover, even assuming for argument's sake that a "legal" act, even one done for an improper purpose, can never give rise to a tortious interference claim, the defendants here did not commit a "legal" act. They posted signs in violation of the recorded restrictive covenants for the condominium. Section 718.303(1), Florida Statutes (2005), imposes upon each unit owner the obligation to comply with condominium covenants and gives other unit owners the right to enforce the provisions through actions for injunction and damages. Thus, the violation of the covenant did infringe upon an enforceable right of plaintiffs' and was, therefore, not "legal." See Barnett & Klein Corp. v. President of Palm Beach A Condominium, Inc., 426 So.2d 1074, 1075 (Fla. 4th DCA 1983) (actions of condominium association in not approving lease between plaintiff and proposed tenant in violation of rule that required all unit owners to be treated alike constituted unjustified interference with contract).[1]
Judge Lawson "questions" whether the "business relationship" element has been sufficiently alleged. The complaint focuses on the "business relationships" with bidders who registered and paid a $50,000 advance security deposit for the privilege of bidding. In Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 815 (Fla.1994), the court stated that "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." What this tells me is that the nature of the relationship need not be founded upon an enforceable contract but cannot be speculative. When using these two polestars for guidance, I conclude that the relationship between the plaintiffs and the bidders here were most analogous to that of merchants and prospective customers, not the community at large. The bidders were identified and had posted sizable security to ensure performance should they bid in this absolute auction. At the end of the day, someone was probably going to purchase those condominium units. But for the interference of defendants, plaintiffs assert, they would have received a greater price. Whether they can prove it is another matter. I think a sufficient "business relationship" has been pled. See Zimmerman v. D.C.A. at Welleby, Inc., 505 So.2d 1371 (Fla. 4th DCA 1987) ("business relationship" element *143 satisfied when defendants interfered with potential purchasers of condominium units by picketing).
As a final point, although this case is factually different from the conspiracy cases to which Judge Lawson refers, the allegations of the complaint fit the elements of the tort. None of the cases cited by Judge Lawson say that the tort only applies to the particular situations presented therein. Because this was a small condominium complex, four unit owners arguably had the peculiar power of economic coercion through their combination. When they combined for the malicious purpose of inflicting economic loss to the plaintiffs, irrespective of the nature or magnitude of the loss, they inflicted a wrong for which a remedy is available under existing common law tort theory.
LAWSON, J., dissenting.
At the outset, I would note that those who do not learn to get along well with others will always pay a price  sometimes emotional, sometimes physical, sometimes financial  for the "friction" they create in the relationships with those around them. But our court system is not designed to compensate everyone for every slight or injury caused by the friction of unhealthy relationships. While the Defendants' actions in this case may have caused unnecessary harm to their former neighbors, the Walters, Plaintiffs below, I do not believe the Defendants' alleged wrongful act of putting a "for sale by owner" sign on their respective properties can or should be compensable in a court of law. I agree with the trial court that the facts of this case do not support a compensable claim under any legal theory, and would affirm.
First, a claim for "tortious interference" will stand under Florida law when the claimant successfully demonstrates: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of a breach of the relationship. With respect to the third element, I find that posting a "for sale by owner" sign on your own property cannot constitute "unjustified interference" with the relationships of others as a matter of law. Cf. Americas Homes, Inc. v. Esler, 668 So.2d 239 (Fla. 5th DCA 1996) (homeowners posting of a for sale sign on their property was protected speech under the First Amendment and could not support a cause of action for tortious interference even where the sign stated that the owners were selling due to "local flooding," which caused neighboring owners to lose prospective land sales); Chipley v. Atkinson, 23 Fla. 206, 1 So. 934, 938 (1887) ("Where one does an act which is legal in itself, and violates no right of another person, it is true that the fact that the act is done from malice, or other bad motive towards another, does not give the latter a right of action against the former. Though there be a loss or damage resulting to the other from the act, and the doer was prompted to it solely by malice, yet, if the act done be legal, and violates no legal right of the other person, there is no right of action."). Exercising a right to offer or advertise your own property for sale, regardless of motive, is legal. This legal action, even if it causes economic harm to others, is not the type of "unjustified" action compensable under the tort of interference with business relationships.[1]
*144 Second, to state a claim for the intentional infliction of emotional distress, the Walters must demonstrate that: (1) the Defendants' actions were extreme and outrageous beyond all bounds of decency and that (2) the Defendants intentionally or recklessly caused them to suffer (3) severe emotional distress. E.g., State Farm Mutual Auto. Ins. Co. v. Novotny, 657 So.2d 1210 (Fla. 5th DCA 1995). The posting of a "for sale" sign on your own property does not remotely approach the type of extreme and outrageous conduct redressed by this tort. Id. at 1212-13 (recognizing that liability for intentional infliction of emotional distress will lie only where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency so as to be deemed utterly intolerable in a civilized community; the recitation of facts must arouse resentment in an average member of community and cause him to exclaim "outrageous"). Because the majority opinion does not address the dismissal of this count, they apparently agree that the trial court properly found that the Walters' complaint failed to state a claim for intentional infliction of emotional distress.
As for the count of civil conspiracy, the trial court recognized that an actionable conspiracy requires an actionable underlying tort or wrong. E.g., Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984). Because I find that the Walters have not stated a cause of action for either tortious interference or intentional infliction of emotional distress, I find that there is no underlying tort or wrong upon which the Walters' civil conspiracy count can rest. Nor do I believe that the Walters have stated a viable claim for conspiracy as an independent tort. To maintain an independent civil conspiracy tort claim, a plaintiff must show some peculiar power of coercion possessed by the conspirators by virtue of their combination. E.g., Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547, 550 (Fla.1977). A common theme in cases involving successful actions for conspiracy under this exception is deprivation of a legal right; often one's right to maintain a livelihood. E.g., Churruca, 353 So.2d at 547 (holding that jai-alai players stated claim for conspiracy against jai-alai fronton owners who allegedly conspired to prevent players from getting jobs in arenas after a players' strike); Snipes v. West Flagler Kennel Club, 105 So.2d 164 (Fla. 1958) (holding that a claim for conspiracy was stated against five kennel club owners who refused the plaintiff greyhound racer privileges at their tracks and used intimidation to drive the plaintiff out of business); Margolin v. Morton F. Plant Hospital Assoc., Inc., 342 So.2d 1090 (Fla. 2d DCA 1977) (holding that a physician stated a claim for conspiracy against a group of anesthesiologists who refused to provide their services to plaintiff's patients, depriving him of his hospital privileges, and thereby driving him out of his practice). This case, by contrast, does not involve a deprivation of livelihood or any other legal right. Posting of the "for sale by owner" signs did not deprive the Walters of the right to conduct their auction, which in fact took place as planned, and which resulted in sales of over $2 million.
Reaching the above conclusions involves more than the blind or formulistic application of alleged facts to legal elements. It should be kept in mind that we are dealing with judicially-created tort causes of action. When the legislature creates a statutory cause of action it acts as "master of the elements and boundaries of the new cause of action." Comptech Intern., Inc. v. *145 Milam Commerce Park, Ltd., 753 So.2d 1219, 1223 (Fla.1999) (emphasis added). This is, of course, equally true of the judicial branch.
Under our common law system:
New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none has been recognized before.... The law of torts is anything but static, and the limits of its development are never set. When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not itself operate as a bar to the remedy.
W. Prosser, The Law of Torts § 1 (4th ed. 1971).
Historically, negligence law addressed only physical property damage or physical injury to persons. See Monroe v. Sarasota County School Bd., 746 So.2d 530, 534-535 (Fla. 2d DCA 1999). However, through time the judiciary expanded the body of tort law to allow for redress of economic injury, but only where "the need to provide the protection [was] so clear that no legislative guidance [was] required." Id. at 535. From my review of Florida case law it appears that "tortious interference" was first discussed in 1948 by our Florida Supreme Court as having been "upheld in several jurisdictions" outside of Florida. Williams v. Dr. P. Phillips & Sons, 160 Fla. 110, 33 So.2d 637, 638 (1948). Ten years later, in 1958, a divided Florida Supreme Court first recognized an independent cause of action for "civil conspiracy." Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla.1958).
It has always been recognized that the judicial creation of causes of action must then be followed by judicial limitation or "line drawing" when those actions are sought to be used to redress new or unique facts. "[W]e endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind." Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 104 (Andrews, J., dissenting). The question posed, therefore, of "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct" is a "broad" one for which "no universal test" has "ever been formulated." Prosser, The Law of Torts, at § 53. Unfortunately, "no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised." Id.
I have found no case in any jurisdiction in this country where a cause of action has been recognized that would allow someone to be sued for placing a "for sale by owner" sign on his or her own property. If we could survey public opinion, I believe that the vast majority of our population would view it as quite shocking that such a claim would be allowed to proceed in our courts to possible verdict. Therefore, in my view, it goes against the "general understanding of mankind" to recognize these facts as applicable to the judicially-created causes of action addressed herein. For these reasons, I would obviously "draw the line" differently than my colleagues.
Additionally, in an era when the executive and legislative branches of our government have worked together to curtail what they view as abuses of our common law tort system by limiting recovery on claims that all would recognize as clearly viable, I view it as dangerous and unwise for the judiciary to expand causes of action to reach conduct clearly beyond the scope historically recognized by law.
NOTES
[1] In their complaint, the Walters did not allege the exact number of condominium units. On remand, the Walters should be allowed to amend their complaint to include these allegations.
[1] Americas Homes, Inc. v. Esler, 668 So.2d 239 (Fla. 5th DCA 1996), relied upon by the dissent, is distinguishable for several reasons: First, for the reason that Judge Sharp identifieda lack of any legitimate purpose for the interference. Second, because the posting of the for sale signs violated a condominium rule. Finally, Americas Homes, Inc. involved a different legal standard of review. There, the trial judge denied the plaintiff's request for temporary injunction. Here, the trial judge dismissed a complaint with prejudice.
[1] I also question the majority's conclusion that the facts alleged by the Walters establish a sufficient "business relationship" with prospective buyers to support a claim. See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812 (Fla.1994) (generally, a mere offer to sell does not, by itself, give rise to a sufficient legal right to support a claim of intentional interference with a business relationship).