793 So.2d 992 (2001)
James L. LANE, David Madeiros, and Lawrence Madeiros, Appellants,
v.
HEMOPHILIA OF THE SUNSHINE STATE, INC., Appellee.
No. 2D00-1784.
District Court of Appeal of Florida, Second District.
February 9, 2001.
*993 Atlas Pearlman, Fort Lauderdale, for Appellants.
Jonathan C. Koch, Tampa, for Appellee.
SALCINES, Judge.
James L. Lane, David Madeiros and Lawrence Madeiros ("the defendants") appeal the nonfinal order denying their motion to transfer venue from Pinellas County to Broward County. Because the causes of action filed against them by Hemophilia of the Sunshine State, Inc. ("HOSS"), did not support venue in Pinellas County on any basis set forth in section 47.011, Florida Statutes (1999), we reverse.
HOSS supplied blood clotting products to hemophiliacs in Florida, along with professional advice, associated care, nursing services, and other products and services for its patients. The defendants were employed by HOSS in various capacities. In May, August, and September of 1998, during the course of their employment with HOSS, each defendant executed a noncompete and a nondisclosure agreement. Within about a year, each defendant resigned from HOSS. Mr. David Madeiros resigned in early July 1999, and Mr. Lawrence Madeiros and Mr. James Lane resigned about two days later. Each of the defendants subsequently became employed by Coram Healthcare Corporation ("Coram"), a business which competed with HOSS.
HOSS filed a multiple-count complaint in Pinellas County, Florida, asserting a variety of causes against each defendant. Counts I IX were lodged against the defendants, individually, and consisted of three counts against each defendant. These included claims for injunctive relief based on the alleged violations of the noncompete and nondisclosure covenants *994 signed by each defendant as well as claims for injunctive relief to prevent the misappropriation of trade secrets by each defendant. Finally, in count X, HOSS sought compensatory damages against the defendants, jointly and severally, resulting from an alleged civil conspiracy. Specifically, count X contained an allegation that the defendants had conspired "to divert the business of HOSS to its competitor Coram by resigning their employment with HOSS simultaneously, by violating their contractual duties to HOSS thereby engaging in unlawful competition, by misappropriating HOSS' trade secrets and customer goodwill and by attempting to transfer them to its direct competitor." In that count, HOSS asserted that the defendants "represented almost the entire internal marketing and sales capability of HOSS at the time of their departure" and that they "jointly possess a greater power to divert the business of HOSS to its competitor than any of them would have possessed individually."
Each allegation contained in the complaint asserted, as its factual basis, conduct which had occurred somewhere in the State of Florida. However, except for the general venue declaration and the allegation that HOSS had its principal place of business in Pinellas County, HOSS did not allege any facts which specifically related to conduct in a particular county. Further, the complaint contained specific allegations that the defendants resided in locations other than Pinellas Countyone resided in Broward County, another in Palm Beach County, and the other had resided in Palm Beach County but had since moved to Mayfield, New York. Finally, the noncompete and nondisclosure agreements, which were attached to the complaint, were completely silent as to the place of signing, selection of venue, or choice of law.
The defendants filed a motion to transfer venue exclusively on the ground that venue was improper in Pinellas County. In response to their motion, HOSS filed a declaration by its president, testifying that defendant David Madeiros came to the HOSS offices in Oldsmar, Pinellas County, Florida, in person, to resign his employment. That declaration also attested that the president had subsequently received letters of resignation from the other two defendants, but did not indicate where such letters were mailed or received. Each defendant filed an affidavit attesting, among other things, that he was employed by the new employer, Coram, but not in Pinellas County; that he had not contacted any HOSS patients in Pinellas County or elsewhere in Florida; that he had not provided any services to Coram in Pinellas County; and, that his employment with Coram did not require him to perform any services in Pinellas County. Following a hearing, the motion to transfer venue was denied. The denial of that motion was incorrect as a matter of law.
The general venue statute controls all actions brought under the common law or pursuant to a statute not containing specific provisions concerning venue; however, certain exceptions to the venue provisions found in chapter 47 have been created. See Gaboury v. Flagler Hosp., Inc., 316 So.2d 642 (Fla. 4th DCA 1975). HOSS does not contend that any of those exceptions are applicable. Instead, HOSS looks to the general venue statute to support the trial court's determination that venue was proper in Pinellas County.
The general venue statute, section 47.011, Florida Statutes (1999), provides: "Actions shall be brought only in the county where the defendant resides, where the cause of action accrued, or where the property in litigation is located." Addressing venue in matters involving more than one *995 defendant, section 47.021, Florida Statutes (1999), provides: "Actions against two or more defendants residing in different counties may be brought in any county in which any defendant resides." All of the defendants resided outside Pinellas County and HOSS does not argue that its action involved property located in Pinellas County. Thus, venue in Pinellas County could not be obtained either on the basis of a defendant's residence or as a result of the location of property in litigation. Rather, the basis of venue in Pinellas County in the present case hinged on the location of the accrual of the action.
As support for the trial court's determination that venue was proper in Pinellas County, HOSS relies exclusively on its claim for civil conspiracy and, in so doing, urges this court to adopt an interpretation of the general venue statute which would allow venue in any county in which any act in furtherance of the civil conspiracy occurred. We decline to create a special venue provision for the type of civil conspiracy HOSS asserts in the present case in light of this court's precedent applying the traditional tort analysis in an analogous case involving another variety of civil conspiracy. See Straske v. McGillicuddy, 388 So.2d 1334 (Fla. 2d DCA 1980).
On appeal, HOSS argues that it asserted the independent tort of civil conspiracy through its allegation that, by their collective action, the defendants possessed a power to injure their former employer that none of them possessed individually. Florida does recognize an independent tort involving a type of civil conspiracy which is based on some "peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in like relation to the plaintiff would not have had." See Margolin v. Morton F. Plant Hosp. Ass'n, 342 So.2d 1090, 1092-93 (Fla. 2d DCA 1977). We have not been asked to address, and thus we do not offer an opinion regarding whether HOSS has made a sufficient claim for such a civil conspiracy. Rather, we address only the propriety of venue in Pinellas County in this case based upon the allegation of such a civil conspiracy.
Inasmuch as there is a dearth of authority in Florida specifically addressing venue in the context of this type of civil conspiracy, we are guided by a tort case involving a civil conspiracy to obtain the property of another, i.e., a conspiracy based upon the commission of an independent wrong or tort which would constitute a cause of action if the wrong were done by one person. See Straske, 388 So.2d 1334. In that case, this court applied a tort analysis to determine the propriety of venue, in regard to the civil conspiracy alleged therein, stating the generally recognized principle that "[a] cause of action for tort arises at the place where the act creating the right to bring the action occurred." Id. at 1336. In Straske, this court considered, among other factors, the location of the formation of the purported conspiracy as well as the location where all of the acts alleged to have been done in furtherance of the conspiracy occurred. In a more recent case addressing venue in the context of torts in general, this court opined that "for venue purposes, a tort claim `is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place.'" PricewaterhouseCoopers LLP v. Cedar Resources, Inc., 761 So.2d 1131, 1134 (Fla. 2d DCA 1999) (quoting Tucker v. Fianson, 484 So.2d 1370, 1371 (Fla. 3d DCA 1986)). Admittedly, it might be difficult to determine where the cause of action accrued in the context of a civil conspiracy case when the pertinent parties are geographically diverse. Nonetheless, it is incumbent upon a plaintiff to support the propriety of its venue selection when that choice is *996 properly challenged by a defendant. HOSS asserted only one act which was alleged to have been committed in Pinellas CountyMr. David Madeiros' resignation of employment at the HOSS office in Pinellas County. That act was probably not the formation of the alleged conspiracy. That act was not the final resignation in a series of resignations which were alleged to have represented the wrongful use of the aggregate power enjoyed by the three employees. That single act did not result in compensable damage under a civil conspiracy theory. Without forwarding more evidentiary support, HOSS failed to demonstrate that venue was proper in Pinellas County.
Reversed and remanded for further proceedings consistent herewith.
WHATLEY, A.C.J., and DANAHY, (Senior) Judge, concur.