PER CURIAM.
This is a breach of contract action in a partial summary judgment posture. The issue of liability was resolved in favor of plaintiff/appellee, Riley, and appellants appeal that nonfinal order pursuant to rule 9.130(a)(3)(C)(iv), Florida Rules of Appellate Procedure.
The following operative facts are undisputed. In mid-1985, appellant On-Site Development Corporation was seeking financing to develop a condominium project called “Riverbend.” Riley, with connections to Ensign Bank, was enlisted to facilitate the financing through that bank.
On May 30, 1985, Riley entered into a Letter Agreement with On-Site Development, acting through defendant/appellant, Brian W. Sparks, as president, which provided in part:
“RE: PROPOSED LOAN AGREEMENT WITH ENSIGN BANK FOR RIVERBEND PROJECT INDIAN RIVER COUNTY
Dear George [Riley]:
Pursuant to our meeting of Friday, May 24, 1985, with Mr. Bruce Gosman at the offices of Ensign Bank in Boca Raton concerning the above subject matter, I am pleased to confirm to you the following agreement:
Upon successful completion of a loan transaction ... with the Ensign Bank for the above subject project, then it is agreed that the above-ground profits received from the subject project shall be shared as follows:
On-Site Development Corporation 45%
Ensign Bank 45%
George Riley 10%
Profit-sharing to take place at the time profits from the subject project are available and said profits will be dis-bursable in the above relative profit shares in accordance with the requirements for Disbursement of Profits that shall be determined in the loan documentation and Profit-Sharing Agreement to be entered into between On-Site Development Corporation and the Ensign Bank.”
The letter was signed by both Riley and Sparks, as president of On-Site.
Subsequently, and before financing had been finalized, defendant/appellant Consolidated Vista Development Corporation was formed to develop the “Riverbend” project, which then became known as the “Coral-stone Club” project. Appellant Sparks also became president of Consolidated Vista.
Because the initial financing arrangement with Ensign Bank was tantamount to a joint venture, contrary to the bank’s policy, at the bank’s insistence new loan arrangements were made and entered into between the bank and Consolidated Vista for the financing of the Coralstone Club project. As a consequence, on May 26, 1986, Riley entered into a new Letter Agreement, this time with Consolidated Vista[1] — also acting through Sparks as president — which provides in material part:
“RE: ENSIGN BANK LOAN ARRANGEMENTS WITH CONSOLIDATED VISTA DEVELOPMENT CORPORATION FOR THE CORALSTONE CLUB PROJECT (FORMERLY RIVERBEND) VERO BEACH, FL
Dear George:
As you know, the original intent and arrangements regarding the above subject matter did not proceed in accordance with the original structure and intent. As a result of this, our Letter of Agreement dated May 13, 1985, and the terms contained therein, are no longer relative [sic] or valid based on the actual outcome and status of the existing loan arrangements on the subject matter.
*203 Therefore, this letter shall set out the new revised terms for payment to you of fees with respect to your services provided in introducing us to the Ensign Bank. This letter shall supersede the Agreement Letter of May 30, 1985, and that letter shall be null and void. Therefore, I am pleased to confirm to you the following revised Agreement:
Upon successful completion of closing of a construction loan satisfactory to our company with the Ensign Bank for the above subject project, then it is hereby agreed that our company shall pay to you the sum of One Thousand ($1,000.00) Dollars per each and every unit closing with each [word deleted] purchaser. This fee arrangement shall be applicable to the 221 units contained in Phase I of the project.
sic * * * * *
The above Agreement shall constitute the extent of our obligations and shall represent full and final payment of fees for your services rendered. This Agreement and any and all payments hereunder are with our wholly-owned subsidiary, Consolidated Vista Development Corporation, which is the owner of title and the developer of the subject project.” (emphasis added)
The final financing was arranged, the project begun and some twenty-two units were sold at the time of suit, with nothing paid to Riley save $5,500 in advances paid early on. Sparks, on behalf of Consolidated Vista, admits there are monies due Riley under the 1986 agreement but he submits the agreement is unenforceable because Riley was acting as a mortgage broker without being registered according to law and thus cannot recover. On advice of counsel, therefore, he has refused to permit payment to Riley by either corporation.
On the foregoing undisputed facts, and without specifying reasons therefor, the trial court granted partial summary judgment as to liability in favor of Riley and against all three defendants/appellants, reserving for trial only the amount of damages due Riley “... from the sale of condominium units that [Riley] might have reasonably expected to receive but for the defendants’ repudiation and anticipatory breach of [Riley’s] agreement.” No expressed ruling was made on the mortgage broker defense raised; but, necessarily, because the liability was determined in Riley’s favor, it must be assumed that such defense was rejected by the trial judge. We reverse.
As to On-Site Development, it was completely off the hook when the May 26, 1986, agreement was entered into; and this is so, whether the foregoing defense is viable or not. That agreement is clear and unambiguous on its face and is not amenable to parol as to what the parties intended. Its construction is a matter of law. Cf., Castle Construction Company v. Huttig Sash and Door Company, 425 So.2d 573 (Fla. 2d DCA 1982).
By its terms, the agreement “... supersede^] the Agreement Letter of May 30, 1985, and that letter, or any other arrangements discussed or agreed upon ... shall be null and void....” Moreover, it is a complete binding contract on its face, the consideration for which is the detriment suffered by the promisee Riley in the loss of his “profit-sharing” and the limitation of his fee to a fixed sum. Stated otherwise, it is a pure novation — even though the obli-gor was substituted, Consolidated Vista for On-Site — obviously agreed to by all interested parties. See, 11 Fla. Jur.2d, Contracts, §§ 185-187, p. 491, 492.
On the latter point, the totality of circumstances of the execution of the May 1986 Letter Agreement on On-Site stationery, and the pluralistic language employed, leave no doubt that Sparks, president of both corporations, was speaking for On-Site as well as Consolidated Vista when he signed as president of Consolidated Vista. On-Site Development was exonerated— Consolidated Vista became obligated.
As to Sparks individually, the only count of Riley’s complaint against Sparks alleges a “conspiracy” expressly with On-Site Development and Consolidated Vista — and unnamed others — to deprive Riley of his just due. On the record, no third party “oth *204 ers” were shown to be involved and the allegations otherwise cannot stand as a matter of law.
It indisputably appears that Sparks was never acting individually at the times material. He acted only as president of the respective corporations and if he conspired at all, it was with either or both of the corporations. It is the law, however, that a corporation cannot conspire with its own officers, or they with it, unless the corporate officers have an independent personal stake in achieving the object of the conspiracy. H & B Equipment Company, Inc. v. International Harvester Company, 577 F.2d 239 (5th Cir.1978); Baker v. McDonald’s Corp., 686 F.Supp. 1474 (S.D.Fla. 1987). Cf., Hackett v. Metropolitan General Hospital, 422 So.2d 986 (Fla. 2d DCA 1982). As to any independent “personal stake” Sparks may have had in the matter here, the only evidence of a possible stake was an “adversarial relationship” created between Riley and Sparks when Riley recorded the 1986 agreement against Sparks’ wishes. We do not believe that this is the independent, personal stake contemplated by the rule in the above cases. Given a material, tangible stake otherwise, personal animosity may bear on any issue of malice, but cannot of itself constitute the “stake.”
It follows, then, that Consolidated Vista is solely liable, unless the “mortgage broker” defense is viable. But as noted, the trial court never expressly determined the issue, which was pleaded and argued. Admittedly, Riley was not a registered mortgage broker and there was conflicting evidence, together with inconsistent inferences to be drawn therefrom, as to whether to begin with he acted as a “mortgage broker” within the purview of chapter 495, Florida Statutes (1985), or, if so, whether under the law, he was exempt. Notwithstanding, while not saying so, the trial judge necessarily determined the issue adversely to appellants, which he should not have, given the foregoing conflicts in evidence. The issue should be fully tried.
We point out at this juncture that all three appellants filed motions for summary judgment as did Riley. The trial court denied theirs and granted Riley’s. In view of what we have held here with respect to On-Site Development and Sparks, their motions should have been granted. Consolidated Vista’s liability must abide the resolution of the mortgage broker defense.
In view of the foregoing, therefore, the order appealed from is reversed. The cause is remanded with directions to enter judgment in favor of On-Site Development Corporation and Brian W. Sparks, individually, and against appellee Riley, and for further proceedings to resolve, by trial if necessary, the validity of the mortgage broker defense.
DAUKSCH J., ORFINGER, M., Judge, Retired, and McNULTY, J.P., Associate Judge, concur.

. While this May 1986 Letter Agreement was executed on behalf of Consolidated Vista, it too was, as was the previous agreement, executed on On-Site letterhead stationery.