575 So.2d 673 (1991)
CEDAR HILLS PROPERTIES CORPORATION and Loeb Partners Corporation, Appellants/Cross-Appellees,
v.
EASTERN FEDERAL CORPORATION, Appellee/Cross-Appellant.
No. 90-776.
District Court of Appeal of Florida, First District.
January 25, 1991.
Opinion Amended on Motion for Rehearing March 11, 1991.
*674 Cindy A. Laquidara-Kennedy and Tracy S. Carlin of Commander, Legler, Werber, Dawes, Sadler & Howell, Jacksonville, for appellants/cross-appellees.
William H. Maness, Jacksonville, for appellee/cross-appellant.
WOLF, Judge.
Cedar Hills Properties Corporation (Cedar Hills) and Loeb Partners Realty and Development Corporation (Loeb Partners) appeal from a final judgment entered against them awarding damages and other relief to Eastern Federal Corporation (EFC). EFC cross-appeals the dismissal of its complaint against an individual corporate officer of Cedar Hills as well as the denial of its request for mandatory injunctive relief. We find merit in appellants' position and reverse portions of the final judgment for the reasons enumerated herein. We find no merit in the cross appeal and affirm as to those issues without further discussion.
On August 14, 1980, EFC leased space for the operation of a movie theater at the Cedar Hills Shopping Center which is presently owned by the appellant Cedar Hills.[1] Loeb Partners acted as Cedar Hills' leasing agent and managed the shopping center. As part of its operation, EFC maintained a pole sign near Blanding Boulevard which informed drivers of the movies that were being shown at the theater.
During 1987, Cedar Hills entered into a lease which allowed for the construction of a drive-through restaurant (Rally's) in the common area of the shopping center near EFC's theater. As a result of the construction of Rally's, the pole sign utilized by EFC was removed, and 40 parking spaces in the vicinity of the theater were removed.
EFC alleged that the above actions caused it to incur damages and brought tort and contract actions against Cedar Hills, Loeb Partners and various other parties.[2] The complaint contained counts for conspiracy, tortious interference with a contractual relationship, and breach of contract, and sought a mandatory injunction and damages.
The pertinent portions of the lease contained the following provisions:
Sec. 2.4 Reservation of Rights by Landlord

*675 Landlord reserves the right to change the number and location of buildings... . Such changes will not materially affect the visibility of the tenant's marquee from Blanding Boulevard nor adversely and materially affect access of tenant's customers to convenient parking.
Sec. 5.1 Common Areas and Facilities

Landlord ... may from time to time change the size, location and nature of any common areas and facilities and may make installations therein and move and remove such installations; provided however, notwithstanding anything to the contrary in this paragraph, landlord shall not interfere with or interrupt the convenient use of tenant's facilities by tenant's customers.
In support of its claim for damages at trial, EFC called Mr. Ira Meiselman, president of Eastern Federal Corporation. During Mr. Meiselman's testimony, EFC introduced documents entitled Cedar Hills Theater Damage Estimates and Cedar Hills Theater Statements of Income and Loss. The damage estimates were for an 18-month period from October 1, 1987 to March 31, 1989, and reflected a loss of $111,507.81.[3] He further stated that the analysis utilized for past damages would be valid to determine predicted losses until the end of the present option period, December 31, 1990. His testimony was that any prediction of lost profits after that date would be speculative. Mr. Meiselman further testified that the revenue loss was a result of both lost parking and the removal of the marquee pole sign, and that the two causes were so intertwined he could not determine the sole cause. Mr. Meiselman stated:
The marquee is important; the parking's important. If you tell me, you know, win or lose this case, tell me which one it is that's caused this drop I can't do it. It's the two of them.
Mr. Meiselman testified that EFC had recently spent a large amount of money on improvements to the theater in anticipation of continuing their lease options.
After a nonjury trial, the judge entered a final judgment against Cedar Hills and Loeb Partners which is quoted below in pertinent part:
The consequences inflicted on Plaintiff by the removal of its marquee/sign, with no notice until it was down, and the loss of convenient use of its Theatre by its customers, were disastrous. The loss of approximately 40 parking spaces nearest the theatre was not, per se, a violation of the lease because Cedar Hills reserved the right to alter and modify the buildings and common areas. The removal of the marquee/sign, which was much more essential to its operation, was the direct cause of a decline in its customer admissions of 34.5% in the first twelve months after said marquee/sign was removed. The crucial importance of a marquee/sign to a theatre located in a shopping center was confirmed by expert witnesses. The absence of it caused extreme inconvenience to potential customers who wished to know what movies were being shown.
In reaching the foregoing conclusions, the Court is not overlooking Sections 2.4 and 5.1 of the Cedar Hills Shopping Center store lease dated August 14, 1980, under which Cedar Hills reserved certain rights which, at least arguably, would include the leasing of space for the Rallys Restaurant, but it also required the landlord, in exercising any such rights, not to
"... materially affect the visibility of tenant's marquee from Blanding Boulevard ..." (2.4) and not to "... interfere with or interrupt the convenient use of tenant's facilities by tenant's customers." (5.1)
The removal of Plaintiff's marquee/sign did both, i.e., took away the visibility of the marquee and interfered with or interrupted the convenience use of tenant's facilities by tenant's customers.
*676 As a result of its findings, the court awarded joint and several relief against Cedar Hills and Loeb Partners which included the following:
1. Damages for profits lost from October 15, 1987 projected to and through December 31, 1990, in the sum of $195,960.00;
2. The unamortized cost of remodeling expended in 1980;
3. The replacement value of the marquee sign of $9,890.00;
4. An abatement and reduction of 34.5 percent of its annual cost of occupying the leased premises including rent, real estate taxes, common area maintenance and insurance until the marquee sign could be replaced by a substantially similar sign.
It is not clear from the final judgment whether the trial judge based the relief upon a finding that the defendants committed a tort or whether the judgment was based upon a breach of contract.
The appellant essentially argues on appeal that the judgment must be reversed because:
1. A principal corporation cannot be held liable for conspiring with its own agent;
2. As a matter of law, a principal or its agent may not be held liable for tortiuous interference with a contractual relationship between the principal corporation and the plaintiff;
3. A principal corporation and its agent cannot be held jointly liable for breach of contract where independent liability was neither pled nor proven;
4. The amount of damages which were awarded are unsupported by the evidence presented at trial.[4]
We find some merit in each of these contentions.
While the trial judge did not state the basis for granting relief, relief in tort for conspiracy or tortiuous interference with a contractual relationship are unsupported by the evidence on the record before us. The parties stipulated that all times pertinent to the controversy at issue, Loeb Partners was acting as an agent of Cedar Hills. The record on appeal also does not demonstrate that at any time Loeb Partners was acting for its own personal gain or that it took any actions which are outside the scope of its capacity as an agent for Cedar Hills. All actions taken by Loeb Partners were on behalf of Cedar Hills.
A conspiracy requires the combination of two or more persons  a meeting of two independent minds intent on one purpose. Buckner v. Lower Florida Keys Hospital Dist., 403 So.2d 1025 (Fla. 3rd DCA 1981), rev. denied, 412 So.2d 463 (Fla. 1982). Since a corporation is a legal entity which can only act through its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest. Buckner, supra; American Credit Card Tel. Co. v. National Pay Tel. Corp., 504 So.2d 486 (Fla. 1st DCA 1987), and Garrido v. Burger King Corp., 558 So.2d 79 (Fla. 3rd DCA 1990). In the instant case, no evidence of such an independent personal stake exists.
For similar reasons, Loeb Partners cannot be determined to have interfered with the contractual relationship between Cedar Hills and EFC. In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by "influencing, inducing or coercing one of the parties to ... breach the contract, thereby causing injury to the other party." West v. Troelstrup, 367 So.2d 253, 255 (Fla. 1st DCA 1979). An agent of a corporate party to a contract, acting within his capacity and scope as an agent, cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship. See West v. Troelstrup, supra.
The appellee argues that the case of Peacock v. GMAC, 432 So.2d 142 (Fla. 1st DCA 1983), allows recovery for tortious interference in a situation similar to the instant *677 case. Peacock, however, does not apply in the instant case. While GMAC was a wholly owned subsidiary of the manufacturer, it was a separate and distinct legal entity, and the facts reflect that GMAC took independent actions which were unrelated to the agency relationship with the manufacturer. In the instant case, while we have two distinct legal entities, the evidence reveals that all of the actions taken by Loeb Partners were on behalf of Cedar Hills, a party to the contract. Thus, unlike Peacock v. GMAC, supra, the facts in the instant case do not support an action for tortious interference.
There is no competent evidence to support recovery pursuant to tort law, but there is evidence to support the judge's finding that sections 2.4 and 5.1 of the lease between Cedar Hills and EFC were breached. The judge, however, found Loeb Partners and Cedar Hills to be jointly and severally liable for the damages which were awarded. While Cedar Hills was a party to the lease agreement, Loeb Partners was not. In addition, the contractual action was only brought against Cedar Hills. While a finding of joint and several liability between a principal and its agent is appropriate in tort actions, such a finding is not appropriate upon a finding of a breach of contract. See White-Wilson Medical Center, v. Dayta Consultants, Inc., 486 So.2d 659 (Fla. 1st DCA 1986); Winter v. International Motel Brokers, Inc., 388 So.2d 232 (Fla. 5th DCA 1980). Unlike the case of City of Miami Beach v. Carner, 15 F.L.W. D2924 (Fla. 3rd DCA Dec. 4, 1990), there is no evidence that Loeb Partners was either named in the contract or held themselves out as an independent beneficiary of the contract; therefore, there is no evidence which would support the entry of a judgment against Loeb Partners, and such judgment must be reversed.
The final issues concern the damage award against Cedar Hills. Appellant asserts that the award was improper for the following reasons:
1. The damages awarded for lost profits were unsupported because the evidence only pertained to gross receipts and failed to establish expenses with specificity;
2. There was insufficient evidence to demonstrate that the breach of contract caused the lost profits;
3. The trial court erred in awarding the cost of unamortized improvements to EFC;
4. The evidence did not support the rent abatement awarded by the trial judge.
In W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348, 1351 (Fla. 1989), the supreme court held that a business can recover for prospective lost profits if it proves 1) the defendant's actions caused the damage, and 2) there is some standard by which the amount of damages may be determined. The estimate of lost profits must include proof of the difference in lost revenue and expenses. Accordingly, "where the evidence only pertains to lost receipts or fails to establish expenses with specificity, an award of damages will be reversed." Born v. Goldstein, 450 So.2d 262, 264 (Fla. 5th DCA 1984).
The appellant asserts that the damages awarded for lost profits only reflect a loss of gross receipts and do not take into account any change in expenses. A review of the testimony of Mr. Meiselman demonstrates that the appellant's argument as to this contention must fail. This testimony specifically states that the damage figures presented to the court do, in fact, take into consideration the decrease in variable expenses which occurred as a result of the lower attendance.
The appellant's contention in relation to causation is somewhat more perplexing. One of the criteria for awarding lost profits enumerated in W.W. Gay is that it must be proven that the wrongful acts of the defendant did, in fact, cause the damage. See also Douglass Fertilizers & Chemicals, Inc. v. McClung Landscaping, Inc., 459 So.2d 335 (Fla. 5th DCA 1984).
In the instant case, the trial judge specifically found that the removal of the marquee sign constituted a breach of the *678 agreement, but that "the loss of approximately 40 parking spaces nearest the theater was not, per se, a violation of the lease." In addition, he found that the loss of the sign "was the direct cause of a decline in customer admissions of 34.5%." These findings are somewhat confusing and do not appear to comport with the evidence presented to the court.
The testimony of the plaintiff's main witness (Mr. Meiselman) was that he could not determine whether the loss of revenue was caused by the removal of the sign or the parking spaces. While EFC's expert, Mr. Broward, indicated that the loss of the sign was important, he indicated that the loss of parking also contributed to lost revenue. There is no evidence that the sign was the sole cause for the loss. It is also not clear what is meant by the trial judge when he says removal of the parking spaces did not per se constitute a violation of the lease.[5] If the judge's order was intended to mean that the actions of Cedar Hills in this regard did not constitute a breach or wrongful act, we are faced with two independent actions, only one of which is wrongful, resulting in damage to the plaintiff.
While it is clear under Florida law that a defendant in tort actions is liable for the consequences of his conduct even though some other causes contributed to the same damage, the responsibility under contract law is somewhat less clear. See Poole v. The Lowell Dunn Co., 573 So.2d 51 (Fla. 3rd DCA 1990), and cases cited therein.
According to Corbin on Contracts, the responsibility for contractual damages which are the result of multiple causes appears to be governed by the "substantial factor" test:
In all cases involving problems of causation and responsibility for harm, a good many factors have united in producing the result; the plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract. Must the defendant pay damages equivalent to the total harm suffered? Generally the answer is Yes, even though there were contributing factors other than his own conduct. Must the plaintiff show the proportionate part played by the defendant's breach of contract among all the contributing factors causing the injury, and must his loss be segregated proportionately? To these questions the answer is generally No. In order to establish liability the plaintiff must show that the defendant's breach was a "substantial factor" in causing the injury.
5 Corbin on Contracts § 999 (1964). The substantial factor test as described in Corbin on Contracts was approved by the Fifth District Court of Appeal in Tuttle/White Constructors, Inc. v. Montgomery Elevator Co., 385 So.2d 98 (Fla. 5th DCA 1980).
The evidence in the instant case supports a finding that the breach of contract was a substantial cause of the lost profits sustained by EFC. That portion of the damage award against Cedar Hills is, therefore, upheld.
The record is not clear, however, as to the evidence which supported the award of damages for the cost of the unamortized improvements or the abatement applied to the cost of the leased premises. The award of the cost of unamortized improvements over the life of the lease would only be justified if it is assumed that the plaintiff would not exercise further options on the lease, thereby not allowing the improvements to be depreciated, or that the damages would be so significant that the improvements made by the plaintiff would be of no value to the EFC. There is no evidence in the record to support either proposition. In fact, the evidence demonstrates that any damage estimates after December 31, 1990, would be purely speculative.
The rent abatement of 34.5 percent over the life of the lease appears to be based on the 34.5 percent attendance drop *679 that EFC alleges was caused by the actions of Cedar Hills. This evaluation is also not supported by the evidence. As previously pointed out, there is no proof that after December 31, 1990, the loss in attendance will continue to be 34.5 percent. In addition, there is no proof that the 34.5 percent loss in attendance equates to a profit loss which would be equivalent to the 34.5 percent abatement remedy fashioned by the trial judge.
As to the final judgment against Cedar Hills, we affirm the award of damages for lost profits, but reverse that portion of the final judgment which awards damages for the cost of unamortized improvements and provides for abatement and reduction of 34.5 percent of the annual cost of occupying the premises. For the reasons explained herein, the final judgment against Loeb Partners is reversed. We remand to the trial court with directions to enter a final judgment consistent with this opinion.
JOANOS and BARFIELD, JJ., concur.

ON MOTION FOR REHEARING
WOLF, Judge.
Upon consideration of appellee's motion for rehearing and review of the trial court's order, we determine that the time periods covered by the award for lost profits and the award of rent abatement do not overlap. We, therefore, readopt our previous opinion but strike the following sentence:
Further, as Cedar Hills correctly points out, the immediate award of this abatement, in addition to the award of lost profits through December 31, 1990, results in a duplication of benefits during the period.
JOANOS and BARFIELD, JJ., concur.
NOTES
[1] The original lease commenced January 1, 1981, to run for five years, and allowed the lessee to exercise six consecutive five-year options. The original lessor was Jacksonville National Bank.
[2] The final judgment only awarded damages against Cedar Hills and Loeb Partners. EFC challenges the failure to award damages against Stempler, who is president of Cedar Hills. We find that the trial judge was correct in dismissing the claim against Stempler individually, and we will discuss only the cause of action against Cedar Hills and Loeb Partners herein.
[3] According to the testimony of Mr. Meiselman, the figures reflected the loss of revenue from ticket sales and concessions minus the decrease in variable costs (e.g., cost of goods sold and film rental). Mr. Meiselman testified that the other costs (fixed costs) would not vary based on admission.
[4] This issue contains a number of sub-issues which will be discussed herein.
[5] This wording can be read to mean that the removal of the parking spaces did not constitute a breach, or that taken together with the removal of the sign, the loss of parking spaces did, in fact, constitute a breach of the lease. It appears that there was competent substantial evidence on the record to support either finding.