PAUL G. BYRON, UNITED STATES DISTRICT JUDGE
HRCC, Ltd. ("HRCC") sues Hard Café International (USA), Inc. ("Hard Rock (USA)"), Hamish Dodds, and Michael Beacham (collectively "Defendants") for violating the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I) and for civil conspiracy (Count II). Currently before the Court is Defendants' Motion for Summary Judgment. (Doc. 109). Upon consideration and review of the record as cited by the parties in their respective briefs, Defendants' Motion for Summary Judgment will be granted.
I. BACKGROUND
Hard Rock Café is rock-and-roll-themed restaurant and retail business with locations around the world. (Doc. 118, ¶ 1). The majority of Hard Rock businesses located outside of the United States are franchised locations. (Id. ¶ 4). Hard Rock Limited-a non-party to this litigation-is a foreign entity that engages in the international franchising of Hard Rock Café businesses. (Id. ¶ 2). Defendant Hard Rock (USA) is a Florida corporation formed in 1996 in part to provide franchise support services and management oversight to Hard Rock franchisees. (Id. ¶ 3).
Plaintiff HRCC is a British Virgin Islands entity. (Id. ¶ 7). In June 2000, HRCC and Hard Rock Limited entered into a franchise agreement (the "Franchise Agreement"). (Id. ¶ 8). Under the Franchise Agreement, Hard Rock Limited licensed to HRCC the right to use the Hard Rock Café mark, and HRCC promised to establish and operate a Hard Rock Café business in Nassau, the Bahamas, and to pay Hard Rock Limited a royalty on merchandise and food and beverage sales. (Doc. 105-3, p. 7).
Due to certain business licensure restrictions in the Bahamas, HRCC sub-licensed its rights to operate the Nassau Hard Rock business to separate Bahamian companies. (Doyle Dep.1439:15-18). From 2000 to 2004, pursuant to a sub-franchise agreement with HRCC, Habacoe Limited ("Habacoe") owned and operated the Nassau Hard Rock business. (Id. at 1454:3-6). In 2004, when the business relationship between Habacoe and HRCC deteriorated, HRCC formed a separate Bahamian entity, HRCC (Bahamas) Ltd., to continue the Nassau Hard Rock business. (Id. at 1455:1-4). HRCC (Bahamas) Ltd. owned and operated the Nassau Hard Rock Café business from April 2004 until March 31, 2014. (Doc. 118, ¶ 12).
Beginning in 2013, HRCC failed to pay Hard Rock Limited all of the royalties that were due under the Franchise Agreement. Hard Rock Limited warned HRCC that if the royalties were not paid as required, the Franchise Agreement would be terminated.
*1322 (Wolszczak Aff. ¶¶ 32-35; Lorenzo Aff., ¶¶ 5-7). HRCC did not pay all of the required loyalties, and Hard Rock Limited accordingly terminated the Franchise Agreement on January 6, 2014. (Doc. 118, ¶ 10). HRCC (Bahamas) continued operating the Hard Rock restaurant in Nassau until a liquidator was appointed on March 31, 2014. (Id. ¶ 12).
Throughout the operation of the Bahamian Hard Rock franchise, Hard Rock (USA) provided management and administrative services to HRCC. (Doc. 108-2, ¶ 7). It is the nature of these "services" that gave rise to this lawsuit. HRCC contends that Hard Rock (USA) interfered with the management of the business and prevented HRCC from making a profit. In contrast, Hard Rock (USA) contends that any actions it took with regard to HRCC's Nassau business were based upon valid "business decisions." (Doc. 109, p. 1).
In December 2014, after HRCC lost its Bahamian franchise, HRCC filed this law suit under the Court's diversity jurisdiction. In its Second Amended Complaint, HRCC maintains that Hard Rock (USA), together with Hard Rock executives Hamish Dodds ("Dodds") and Michael Beacham ("Beacham"), caused the franchise to incur financial losses by refusing to provide concessions given to other franchisees; by failing to disclose that other Hard Rock stores were experiencing losses in food sales; by fabricating reasons to justify terminating the Franchise Agreement; and by wrongfully terminating the Franchise Agreement. (Doc. 38, ¶ 95(a)-(h) ). Based on these actions, HRCC asserts two claims: In Count I HRCC alleges that Defendants committed deceptive and unfair practices in violation of FDUTPA. In Count II, HRCC alleges that Defendants Dodds and Beacham "conspired with one another to drive HRCC out of business in an effort to wrongfully seize the franchises and re-sell such franchises to a third party for profit." (Id. ¶ 99). HRCC seeks "recovery of all monies tendered by HRCC in connection with the opening and operation of its Hard Rock Café restaurant franchise." (Id. at p. 17). Defendants now move for summary judgment on both the FDUTPA claim and the civil conspiracy claim. (Doc. 109, p. 14-15).
II. STANDARD OF REVIEW
To prevail on a summary judgment motion, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Davila v. Gladden , 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting Carter v. City of Melbourne , 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam) ). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver , 746 F.3d 1288, 1298 (11th Cir. 2014). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Brooks v. Cty. Comm'n of Jefferson Cty. , 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting Walker v. Darby , 911 F.2d 1573, 1577 (11th Cir. 1990) ). If, after adequate time for discovery, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is mandated. Celotex , 477 U.S. at 322-23, 106 S.Ct. 2548.
*1323 III. ANALYSIS
A. FDUTPA Claim (Count I)
In Count I, HRCC alleges that Defendants violated FDUTPA through a series of interactions that HRCC characterizes as "unfair or deceptive." In its prayer for relief, HRCC requests actual damages "in amounts to be proven at trial." (Doc. 38, p 17). Defendants move for summary judgment on the FDUTPA claim, arguing, among other things, that HRCC failed to provide any evidence of actual damages-a required element under FDUTPA.
FDUTPA provides that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages , plus attorney's fees and court costs ...." § 501.211(2) (emphasis added). It is well established that actual damages are a required element of a FDUTPA claim. Lustig v. Bear Stearns Residential Mortg. Corp. , 411 Fed.Appx. 224, 225 (11th Cir. 2011) (per curiam). For purposes of FDUTPA, actual damages must be direct damages, not consequential damages in the form of lost profits. Hetrick v. Ideal Image Dev. Corp. , 372 Fed.Appx. 985, 991 (11th Cir. 2010) (per curiam); Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc. , No. 8:09-cv-445-T-33TBM, 2014 WL 3417569, at *12 (M.D. Fla. July 14, 2014). Although "actual damages" is not defined in the statute, courts have consistently applied a narrow definition of the term:
Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of actual damages.
Dem. Rep. Congo v. Air Capital Grp., LLC , 614 Fed.Appx. 460, 472 (11th Cir. 2015) (quoting Rollins, Inc. v. Heller , 454 So.2d 580, 585 (Fla. 3d DCA 1984) ). Thus, there are only two possible ways to measure actual damages in a FDUTPA claim: (1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service. 614 Fed.Appx. at 472.
In their Motion for Summary Judgment, Defendants state: "HRCC deferred providing its 'actual damages' composition and proof until making its expert disclosures but unaccountably made no expert disclosure or supplementation." (Doc. 109, p. 19).[1] Defendants argue that HRCC cannot maintain its FDUTPA action because HRCC failed to provide any computations or estimates of actual damages-despite ample opportunity to do so through the discovery process.
In order to survive Defendants' Motion for Summary Judgment, HRCC must point to evidence sufficient to allow a jury to reasonably find that it incurred actual damages, as measured under FDUTPA. See Brooks , 446 F.3d at 1162. In its response to Defendants' summary judgment motion, however, HRCC makes no attempt to clarify the issue of damages and instead focuses its response on the *1324 issue of whether the Defendants' actions can be considered "unfair or deceptive." (Doc. 108, p. 18). Indeed, in a single paragraph, HRCC responded to Defendants' FDUTPA arguments without any mention of damages at all. Moreover, a careful review of the record reveals that HRCC has avoided providing any meaningful evidence that would satisfy the measure of damages needed for a successful FDUTPA claim. To be sure, HRCC makes several references in the record to damages in the form of lost profits and added expenses.[2] Such references have no bearing on the issue of damages in this case, however, because they do not fall within the two established measures for damages for a FDUTPA claim. Without any response from HRCC regarding its actual damages, the Court is left with nothing but conjecture as to what, if any, its actual damages are. HRCC's burden at this stage of the proceedings is well established: Where a nonmoving party fails to make a showing on an essential element of their claim, "the plain language of Rule 56(c)mandates the entry of summary judgment." Celotex , 477 U.S. at 322-23, 106 S.Ct. 2548 (emphasis added). In this case, HRCC has failed to provide any evidence of its actual damages-an essential element under FDUTPA. Summary judgment is therefore mandated.[3]
Cases disposing of FDUTPA claims for failing to establish actual damages are numerous. For example, in National Union Fire Insurance Co. of Pittsburgh v. Tyco Integrated Security., LLC , No. 13-CIV-80371, 2015 WL 3905018 (S.D. Fla. June 25, 2015), the district court granted summary judgment "[b]ecause [the plaintiff] failed to provide any evidence of actual damages despite a protracted and ample discovery period." Id. at *33. Similarly, in Hanson Hams, Inc. v. HBH Franchise Co. , No. 03-61198-CIV, 2004 WL 5470401 (S.D. Fla. Dec. 21, 2004), the district court granted the defendant's motion for summary judgment, holding in part that the plaintiff had failed to establish actual damages. Id. at *11. In both cases, the plaintiffs provided at least some estimation of their alleged damages. Here, conversely, at no point does HRCC provide an estimation, calculation, or even explanation of what, if any, its damages are. As the aforementioned cases instruct, summary judgment of a FDUTPA claim is proper where a defendant fails to make a sufficient showing of actual damages.
Because HRCC has failed to establish an essential element of its FDUTPA claim, Defendants are entitled to summary judgment on Count I.
B. Civil Conspiracy Claim (Count II)
In Count II, HRCC alleges that two of Hard Rock (USA)'s officers, Defendants Dodds and Beacham, engaged in a civil conspiracy to harm HRCC. Defendants move for summary judgment on the grounds that the claim is barred by the intracorporate conspiracy doctrine.
Under Florida Law,[4] the elements of civil conspiracy are: "(a) an agreement between two or more parties, *1325 (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." United Techs. Corp v. Mazer , 556 F.3d 1260, 1271 (11th Cir. 2009) (applying Florida law). According to the intracorporate conspiracy doctrine, however, a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers. See Lipsig v. Ramlawi , 760 So.2d 170, 180 (Fla. 3rd DCA 2000) (finding that "neither an agent nor an employee can conspire with his or her corporate principal or employer"). This is because the actions of corporate agents, acting within the scope of their employment, are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy. See Williams v. Michelin N. Am., Inc. , No. 6:04CV815ORL31DAB, 2005 WL 2708308, at *2 (M.D. Fla. Oct. 21, 2005).
HRCC argues that its civil conspiracy claim is cognizable under the "personal stake exception" to the intracorporate conspiracy doctrine. (Doc. 121, p. 19). Under that exception, a corporate employee may be liable for conspiring with his or her corporation or with other corporate agents where "the agent has a personal stake in the activities that are separate and distinct from the corporation's interest." Cedar Hills Props. Corp. v. E. Fed. Corp. , 575 So.2d 673, 676 (Fla. 1st DCA. 1991).
The personal stake exception was first formulated by the Fourth Circuit in an anti-trust case. Greenville Publ'g Co. v. Daily Reflector, Inc. , 496 F.2d 391, 399-400 (4th Cir. 1974) ; Hackett v. Metro. Gen. Hosp. , 422 So.2d 986, 988 n.2 (Fla. 2d DCA 1982) (citing Greenville as authority for the personal stake exception recognized in Florida). Importantly, the Fourth Circuit subsequently warned against applying the exception too broadly, acknowledging that the exception "threatens to swallow the rule." Oksanen v. Page Mem'l Hosp. , 945 F.2d 696, 705 (4th Cir. 1991) (en banc) (declining to extend the exception beyond the rationale underlying the Greenville decision).
Other courts that have applied the exception appear to have heeded that warning, choosing to apply the exception narrowly. For example, the Seventh Circuit has found that the intracorporate conspiracy doctrine "is not avoided simply by showing that corporate employees were motivated in part by personal bias." Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508 , 4 F.3d 465, 470 (7th Cir. 1993) (emphasis added). Similarly, the Third Circuit has held that the exception applies "when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment." Heffernan v. Hunter , 189 F.3d 405, 412 (3d Cir. 1999) (emphasis added) (footnote omitted); see also Buschi v. Kirven , 775 F.2d 1240, 1253 (4th Cir. 1985) (explaining that while authorized acts of an employee would be protected under the intracorporate conspiracy doctrine, unauthorized acts would not). As these cases instruct, the personal stake exception requires more than some incidental personal benefit-the exception applies only "where corporate employees are shown to have been motivated solely by personal bias." Hartman , 4 F.3d at 470 (emphasis added).
According to HRCC, the personal stake exception applies to this case because Dodds and Beacham both had bonus-earning potential tied to Hard Rock's success. (Doc. 121, p. 18). Such an interpretation, however, is contrary to a line decisions that have held that higher compensation to a corporate employee is not a sufficient "personal interest" to trigger application of the personal stake exception.
*1326 See, e.g., Bailey v. Atl. Auto. Corp. , 992 F.Supp.2d 560, 569 (D. Md. 2014) ; United States v. Gwinn , No. CIVA 5:06-cv-00267, 2008 WL 867927, at *25 (S.D.W. Va. March 31, 2008) ; Douty v. Irwin Mortg. Corp. , 70 F.Supp.2d 626, 633 (E.D. Va. 1999). As explained by the court in Gwinn , "any 'personal stake' defendants had in increased commissions was incidental to their employment relationship with [the corporation] because their commissions were determined and paid by [the corporation]." Gwinn , at *25. Such interests are not "wholly independent" from the corporation's interest, and therefore cannot be considered a "personal stake." Id. This analysis is persuasive. Where, as here, a corporate agent's compensation is directly related to the corporation's success, the two interests cannot be separated and the personal stake exception does not apply. In this case, the personal interest HRCC alleges is a bonus-earning potential "based upon Hard Rock's performance." (Doc. 121, p. 19). By HRCC's own account, the bonus-earning potential is directly related to the corporation's success. Because these interests cannot be separated, the personal stake exception does not apply.
HRCC's only other argument for application of the personal stake exception is that Beacham's own emails "prove that he had a motive to rid the Hard Rock system of Kevin Doyle, who he described as a cancer."[5] (Id. ). HRCC provides neither an explanation nor legal support for this assertion. Nonetheless, the personal animosity that HRCC suggests is woefully inadequate to support application of the personal stake exception. As previously stated, the personal stake exception requires more than some incidental personal benefit. Any personal satisfaction that Beacham would receive from "ridding" Hard Rock of its interaction with Kevin Doyle simply does not rise to an independent personal gain that would warrant application of the personal stake exception. And other courts agree. In Cox v. Cache County , No. 1:08-cv-124 CW, 2013 WL 4854450, at *7 (D. Utah Sept. 11, 2013), the district court found that the defendant's personal animosity against the plaintiff was not a personal stake for civil conspiracy purposes. Also, in Jones v. City of College Park , 540 F.Supp.2d 1300 (N.D. Ga. 2007), the district court found that racial animosity against the plaintiff was not a sufficient personal interest, explaining that the exception "would only apply to defendants with independent economic stake in the conspiracy." Id. at 1321 ; see also On-Site Dev. Corp. v. Riley , 564 So.2d 201, 204 (Fla. 5th DCA 1990) (per curiam) (finding that "personal animosity ... cannot of itself constitute the 'stake' "). Similarly here, Beacham's personal animosity-if any-is not a sufficient personal interest to warrant application of the personal stake exception.
To support its personal stake argument, HRCC directs the Court to only one case, Regions Bank v. Kaplan , No. 8:12-CV-1837-T-17MAP, 2014 WL 5088889 (M.D. Fla. Sept. 30, 2014). That case involved a motion to dismiss a civil conspiracy claim in a suit against multiple LLCs, all of which consisted of the same sole managing member. Id. at *6. The defendant LLCs argued that each entity consisted of the same sole member and, therefore, they collectively lacked the multiplicity of actors necessary for the formation of a conspiracy. Id. The court held otherwise, finding that each limited liability company was a separate entity capable of conspiring. Id. Thus, the holding in Regions Bank does nothing more that reiterate the well-established principle that, for a conspiracy claim, there must be two or more parties. Here, both Defendants *1327 named in the conspiracy claim were executives of Hard Rock (USA) at all relevant times. Any actions they took within the scope of their employment are attributed to the corporation. No claims have been made, and no facts suggest, that Dodds or Beacham were acting outside the scope of their employment. As it is firmly established: "[E]mployees, when acting in the scope of their employment, cannot conspire amongst themselves." Williams , 2005 WL 2708308, at *2 (quoting McAndrew v. Lockheed Martin Corp. , 206 F.3d 1031, 1036 (11th Cir.2000) ).
Because HRCC fails to show that Dodds and Beacham had a personal stake in the alleged conspiracy, the personal stake exception does not apply and the intracorporate conspiracy doctrine precludes liability for civil conspiracy. Defendants are, therefore, entitled to summary judgment on Count II as well.
C. Defendants' Counter Claim
The Court's ruling on Defendants' Motion for Summary Judgment resolves all remaining claims raised by HRCC in its Second Amended Complaint. There still remains unresolved the counterclaim raised by Defendants in their answer to HRCC's Second Amended Complaint. (Doc. 70). In their counterclaim, Defendants seek recognition under the Florida Uniform Out-of-Country Foreign-Money Judgment Recognition Act, Fla. Stat. §§ 55.601 -.607, of two judgments issued in the Royal Court of Jersey. Defendants explain in their Motion for Summary Judgment that they seek recognition not for collection of the judgment, but because the judgments are "fatal to HRCC's claims against Hard Rock (USA)". (Doc. 109, p. 23). In light of the Court's ruling on summary judgment, Defendants are asked to advise the Court as to the status of this remaining counterclaim. Moreover, if Defendants wish to pursue the counterclaim, Defendants are advised to provide the Court with copies of the judgments issued by the Royal Court of Jersey. Although Defendants attempted to attach the judgments to their counterclaim, they appear to have inadvertently provided the Court with only one of the judgments.
IV. CONCLUSION
For the aforementioned reasons, it is ORDERED AND ADJUDGED that:
1. Defendants' Motion for Summary Judgment (Doc. 109) is GRANTED .
2. The parties are DIRECTED to advise the Court of the status of the remaining counterclaim (Docs. 70) in light of this order.
DONE AND ORDERED in Orlando, Florida, on September 13, 2016.

HRCC's response to interrogatories provides:
Plaintiff has not yet determined all of the "actual damages" that it seeks to recover. Plaintiff intends to retain an expert witness as to damages who will be charged with the responsibility of, inter alia , calculating the damages sustained by Plaintiff. Once Plaintiff retains such an expert witness and, consistent with the deadlines for expert disclosures, Plaintiff shall supply Defendants with the amount of "actual damages" that Plaintiff sustained.
(Doc. 106-1, pp. 17-18).

For example, HRCC provides that "the costs associated with keeping HRC Nassau open at night resulted in annual losses ranging from $350,000 to $400,000." (Pl.'s Second Am. Compl., ¶ 40).

In its response, HRCC appears to ask the Court to amend its complaint to conform to the record evidence in order to assert a new theory of liability. (Doc. 121, p. 17, n.10). However, it is well-settled that "[a] party may not amend [its] complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co. , 382 F.3d 1312, 1315 (11th Cir. 2004).

In diversity cases, a district court applies the law of the state in which it sits. Alexander Proudfoot Co. World Headquarters v. Thayer , 877 F.2d 912, 916 (11th Cir. 1989).

Kevin Doyle is a shareholder of both HRCC and HRCC (Bahamas).