DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STACIE WEISMAN,** an individual and **MARKETING AND MANAGEMENT, SOLUTIONS AND STRATEGIES, LLC,** a Florida limited liability company,
Appellants,

v.

**SOUTHERN WINE & SPIRITS OF AMERICA, INC.,** d/b/a **SOUTHERN WINE & SPIRITS OF FLORIDA,** a Florida for profit corporation, **JOHN WITTIG,** an individual, **PATRICK CASSIDY,** an individual, **GENE SULLIVAN,** an individual, **RICK RIESGO,** an individual, and **RON SEIDA,** an individual,
Appellees.

No. 4D17-3734

[May 13, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Thomas H. Barkdull, III, Judge; L.T. Case No. 502014CA010213XXXXMB AD.

Leonard S. Feuer of Leonard Feuer, P.A., West Palm Beach, for appellants.

David P. Ackerman, Jessica B. Rosenthal and Kristen L. McKeever of Akerman LLP, West Palm Beach, and Katherine E. Giddings of Akerman LLP, Tallahassee, and Jan Nielsen Little and John W. Keker of Keker, Van Nest & Peters LLP, San Francisco, California for appellees.

MAY, J.

In a world of competitive business, the plaintiffs—Ms. Weisman ("Weisman") and her current employer Market and Management, Solutions and Strategies, LLC ("MMS")—appeal summary judgments in favor of Weisman's former employer on their claims of tortious interference and conspiracy to tortiously interfere among others.[1]  They also appeal an

---

[1] The plaintiffs sued the former employer and several individuals for tortious interference with business relationships.  They also brought claims for conspiracy to commit tortious interference, violation of Florida's Deceptive and Unfair Trade

order denying their motion for leave to amend the complaint. We find no error and affirm.

The former employer is a wholesale wine and spirits distributor operating in 35 states. It purchases alcoholic beverages from suppliers and sells them to retailers. Weisman worked for the former employer for thirteen years, becoming the Director of Business Relations.

In 2012, the former employer began to reorganize its Florida sales operation. It offered Weisman a new position that increased her responsibilities and earning potential, but limited the geographic scope of her assigned territory. She refused her new position.

In September 2012, Weisman was charged with federal conspiracy to commit money laundering, obstruction of justice, and witness tampering, to which she pled guilty in 2013. In October 2012, FBI agents contacted her concerning a different matter with Palm Bay International, a brand owner and sales agent that brokers wine and spirits sold by the former employer and other distributors ("Palm Bay").

Palm Bay received an anonymous letter claiming that one of its employees was wrongfully converting funds for personal use with the assistance of two of the former employer's employees. Because Weisman had been criminally charged and was cooperating with the government regarding her September 2012 conviction, she agreed to an interview. The FBI, IRS, United States Attorney's Office for the Eastern District of New York, and United States Attorney's Office for the Southern District of Florida confirmed in writing they were not investigating the former employer.

In November 2012, Weisman was terminated because of her refusal to accept her new position and the former employer's growing concern over her pending felony charges. In January 2013, the former employer entered into a Consent Order with Florida's Division of Alcoholic Beverages and Tobacco that contained a corrective action plan. The plan required the former employer to comply with Florida's Tied House Evil laws. Specifically, it required compliance with the rules and regulations governing permissible promotional and third-party marketing activities.

In the fall of 2013, Weisman began to work as a "consultant" with MMS,

---

Practices Act and Antitrust Act of 1980, and injunctive relief. Weisman pled a claim for retaliatory discharge against the former employer. We write to address the tortious interference and conspiracy claims only.

a third-party marketing company in the liquor industry that her nephew started. Suppliers paid MMS to perform services for retailers. Weisman controlled MMS's bank account, prepared her own 1099 form for MMS, and managed their business affairs.

In April 2014, the former employer discovered Weisman was fraudulently using its FedEx account number without authorization. As a result, the State charged her with fraud. She pled nolo contendere and was adjudicated guilty.

The former employer also discovered Weisman was posing as a beverage buyer to its representatives without a valid liquor license. She was negotiating prices, requesting price quotes, and telling the former employer's representatives that she was the decision maker on behalf of retailers that were the former employer's accounts. And, she admitted to procuring marketing funds and restaurant equipment for retailers in violation of Florida law.

Finally, the former employer discovered Weisman was requiring suppliers to pay MMS's marketing funds to have their products included in a retailer's beverage program. She would then remove the former employer's products from the retailer's premises.

MMS had a negative impact on the former employer's sales through lost business with its retailers who were also clients of MMS. Because of Weisman's actions and the prior Consent Order, the former employer sent a memorandum to its retailer clients, stating:

> [The former employer], including all of its divisions, has made a decision not to do business directly with [Weisman] or any marketing or management company in which she is an employee or consultant. We have always had a great relationship with your business and [the former employer] wants to continue to work with your [retailer business] to provide [the] best in class alcoholic beverage solutions. All of the divisions of [the former employer] desire to continue that great relationship established over the years if you and your managers will deal directly with us. One of our consultants will be reaching out to you shortly to discuss next steps. If you are designating [Weisman] as your representative, we regret to inform you that we will not work with her. If you have any questions, please call one of us listed above to discuss.

The plaintiffs sued the former employer, alleging multiple claims. At the close of discovery, the former employer moved for summary judgment on each of the six claims. Following a hearing on the motions, Weisman and MMS moved to amend their complaint for a second time. They sought to allege the former employer sent the memorandum to a supplier that had not yet developed a relationship with MMS, which resulted in the prospective client choosing not to do business with them. The trial court granted the former employer's six motions for summary judgment and denied the plaintiffs' motion for leave to amend.

The plaintiffs now appeal.

We have de novo review. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Overseas Inv. Grp. v. Wall St. Electronica, Inc.*, 181 So. 3d 1288, 1291 (Fla. 4th DCA 2016).

Weisman and MMS argue the court erred in entering summary judgment on the tortious interference claim because: (1) the trial court incorrectly found the former employer's "prior relationships with [their] clients justified its interference;" (2) there were disputed issues of material fact; and (3) they proved damages. The former employer responds it had a privilege to interfere to protect its business interests and there were no disputed issues of material fact concerning the privilege.

Weisman and MMS reply the former employer's conduct was not privileged because it used improper means and bad faith. In any event, they argue whether a privilege protected the former employer is a jury issue. *See Howard v. Murray*, 184 So. 3d 1155, 1167 (Fla. 1st DCA 2015). They rely on *Bluesky Greenland Envt'l Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013).

- ### ***The Tortious Interference Claim***

"The tort of tortious interference teeters between two competing values—the desire to protect the reasonable expectations of the parties to a business relationship on the one hand, and the need to avoid excessive restrictions on freedom of competition on the other." *Jay v. Mobley*, 783 So. 2d 297, 299 (Fla. 4th DCA 2001). A cause of action for tortious interference with an advantageous business relationship requires proof of four elements:

(1) the existence of a business relationship under which the

plaintiff has legal rights;

(2) the defendant's knowledge of the relationship;

(3) the defendant's intentional and unjustified interference with the relationship; and

(4) damages resulting from the breach of the relationship.

*Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009).

### 1. *The Privilege Defenses*

Two privileges have been recognized in defense of a tortious interference claim. The first is the competition privilege, which is generally applied where two companies compete over a contract or business. *Jay*, 783 So. 2d at 299 ("Florida 'recognizes competition between competitors, and if there is an interference with a non-exclusive right this is a privileged interference.'") (quoting *Int'l Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 31 (Fla. 3d DCA 1973)). To defend using this privilege, a defendant must prove four distinct elements. RESTATEMENT (SECOND) OF TORTS § 768 (1979).

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor . . . does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

*Id.*

The second is the privilege to interfere to protect one's own financial and contractual interests. *See Salit v. Ruden, McClosky, Smith Schuster &*

*Russell, P.A.*, 742 So. 2d 381 (Fla. 4th DCA 1999). We will refer to that as the "protection" privilege. To defend using this privilege requires only that the defendant show improper means were not employed. *Id.* at 386. The burden to defeat the privilege then shifts to the party that brought the tortious interference claim to show improper means were employed. *Id.*

Under the protection privilege, "improper means" has been interpreted as "doing no more than insist[ing] upon existent legal rights in a permissive way." *Horizons Rehab., Inc. v. Health Care & Ret. Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002). In *Horizons Rehab., Inc.*, the Fifth District held the defendant's actions were not improper where the defendant learned of the plaintiff's ongoing litigation and broke off negotiations for continued services. *Id.* at 961–62, 964. Here, the former employer's actions were similar.

The former employer agreed to a Consent Order that required it to refrain from conducting business with a third-party marketing company that violated any federal or Florida regulations concerning alcohol distributor/retailer relationships. When the former employer learned Weisman engaged in this type of conduct and continued to commit fraud against it, the former employer acted to protect its own financial and contractual interests. It did so by sending the memorandum notifying retailers that it would not work with Weisman.

Weisman and MMS argue the former employer's monopoly over the distributor market was tantamount to coercing the retailers to refrain from working with Weisman. Even if true, it does not destroy the former employer's privilege to protect its interests. *Id.*

The former employer's memorandum simply informed the retailers that it would be unable to do business with Weisman. It's important to note what the memorandum did not do. It did not:

- mention Weisman's illegal acts;

- mention Weisman's prior convictions;

- accuse MMS of engaging in illegal practices; nor

- mention that it would exercise its "monopoly power" to blackmail or boycott any retailer that worked with Weisman.

The undisputed material facts established the former employer's

6

actions "were privileged and a matter of legal right." *See Horizons*, 810 So. 2d at 964.

### 2. *Disputed Issues of Material Fact*

Weisman and MMS next argue there were disputed issues of material fact precluding summary judgment. Yet, they fail to identify those facts. The only relevant material facts were undisputed. Because they fail to identify the disputed issues of material fact, their argument is waived. *See Hammond v. State*, 34 So. 3d 58, 59 (Fla. 4th DCA 2010) ("Claims for which an appellant has not presented any argument . . . are insufficiently preserved for review and are waived.").

### 3. *Damages*

Because the undisputed facts established the former employer properly exercised the protection privilege, the plaintiffs' damages are irrelevant. *See Ethyl Corp. v. Balter,* 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) ("[S]o long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable.").

- ### ***Conspiracy to Commit Tortious Interference***

Weisman and MMS argue the trial court erred in entering summary judgment on the conspiracy to commit tortious interference claim because: (1) the complaint sufficiently pled the independent tort of conspiracy; and (2) the intracorporate conspiracy doctrine does not extend to external actors. The former employer responds there was no underlying tort, and the intracorporate conspiracy doctrine bars their claim. We agree with the former employer.

"[A]n actionable conspiracy requires an actionable underlying tort or wrong." *Walters v. Blankenship,* 931 So. 2d 137, 140 (Fla. 4th DCA 2006). Because there was no actionable tortious interference with Weisman or MMS's business relationships—the underlying tort—there can be no conspiracy to commit the tort. *See Wright v. Yurko*, 446 So. 2d 1162, 1164–65 (Fla. 5th DCA 1984) ("Since privilege bars [plaintiff's] causes of action against the [defendants] for defamation, it follows that there can be no actionable conspiracy to commit the same acts.").

Alternatively, the intracorporate conspiracy doctrine bars the plaintiffs' conspiracy claim. That doctrine forecloses an "actionable conspiracy between an entity and its officers or agents." *Hoon v. Pate Const. Co.,* 607

So. 2d 423, 430 (Fla. 4th DCA 1992). This is because "[a] conspiracy requires the combination of two or more persons—a meeting of two independent minds intent on one purpose." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). Where corporate agents are acting within the scope of their employment, their actions "are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016).

The plaintiffs reply the "personal stake" exception to the intracorporate conspiracy doctrine applies. Under the exception, a corporation conspiring with its own agents can be held liable where its "agent has a personal stake in the activities that are separate and distinct from the corporation's interest." *Cedar Hills Props. Corp.*, 575 So. 2d at 676.

"[T]he personal stake exception requires more than some incidental personal benefit—the exception applies only 'where corporate employees are shown to have been motivated *solely* by personal bias.'" *HRCC, Ltd.*, 302 F. Supp. 3d at 1325 (quoting *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F. 2d 465, 470 (7th Cir. 1993)); *see also Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017) ("[A] 'personal stake' must be more than just personal animosity on the part of the agent. Moreover, the benefit to the agent must be more than 'incidental' to the benefit to the principal.") (internal citations omitted).

Weisman and MMS suggest the personal stake exception is applicable because the former employer sent the memorandum to MMS's retailer clients, who did not have a relationship with the former employer. The plaintiffs are mistaken in their application of the exception. The exception applies where the conspiracy alleges participation of the former employer's *agents* acting in their own self-interest. *See Mancinelli*, 217 So. 3d at 1037.

The exception is not invoked by affecting Weisman and MMS's third-party clients. To the extent that the plaintiffs argue the former employer coerced MMS's retail clients to conspire, they failed to establish those clients acted in unison with the former employer to commit the conspiracy. *See Snipes v. W. Flagler Kennel Club, Inc.*, 105 So. 2d 164, 166 (Fla. 1958).

- ### ***Conclusion***

The trial court correctly entered summary judgment on the tortious interference claim where the former employer established the protection privilege by proving it did not use improper means to protect its ongoing financial and business interests. There were no disputed issues of

material fact on that issue.  As there was no actionable tort, the trial court correctly entered summary judgment on the conspiracy claim.  And, the intracorporate doctrine further bars the conspiracy claim.

We find no merit in the other issues raised.  We affirm the summary judgments and the order denying the plaintiffs' motion to amend without further comment.

*Affirmed.*

GROSS and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***